JAMES McCARTHY *vs.* BOARD OF ALDERMEN OF CITY OF CENTRAL FALLS.

DECEMBER 10, 1915.

PRESENT:   Johnson, C. J., Parkhurst, Sweetland, Vincent, and Baker, JJ.

*(1)   Certiorari.   Removal of Police Officer.   Judicial Proceedings.*

While the power of removal from office is not essentially judicial, yet when the law vesting the authority in a local body indicates that it shall be exercised for cause only, and expressly or by implication that the officer shall have notice of the charges against him and shall be entitled to be heard and to offer evidence in his defence, then the proceeding is judicial in character. *Donahue* v. *Town Council,* 25 R. I., 79, distinguished.

*(2)   Certiorari.   Removal of Police Officer.*

The action of the board of aldermen of the city of Central Falls in removing a member of the paid police department, under clause 2, Section 4 of the charter is reviewable on *certiorari,* on questions of jurisdiction and of law.

*(3)   Certiorari.   Removal of Police Officer.*

The charter of the city of Central Falls provides that members of the paid police department may be removed "for misconduct or incapacity of such a character as the board of aldermen may deem a disqualification for said office."

*Held,* that while a wide discretion was given the board in making definitions and regulations as to what should constitute misconduct or incapacity, this discretion could not defeat the requirement that there could only be removal for cause, necessitating evidence in support of the charge.

*(4)   Certiorari.   Removal of Officer.*

As a tribunal acting in a judicial capacity has no authority to make a finding of fact in the entire absence of evidence to support it, an allegation that petitioner was removed from office without any evidence to prove the charge against him, raises a question of law, and, perhaps in a narrow sense, a question of jurisdiction, which may be reviewed on *certiorari.*

*(5)   Certiorari.   Rules as to Examination of Evidence.*

As a writ of *certiorari* does not lie to review findings of fact, the court will not under it ordinarily examine or consider the evidence, but will do so in so far as may be necessary to determine whether or not the inferior tribunal had jurisdiction, or whether or not there was any competent evidence to support the charges, and whether or not the rulings admitting testimony over objection were correct, where there was no other and competent evidence to support the charges; and for these last enumerated purposes the evidence may be brought up with the record.

*(6)   Certiorari.   Removal of Police Officer.*

Upon charges against a police officer for failure to do certain acts which it is implied he could have and ought to have done as part of his official duties, both the duty and the ability to perform the acts must be shown in order to establish the charge of misconduct, and if the acts could only be done by issuance of legal process, which was refused by those having authority to do so upon his application therefor in good faith, there would be no misconduct on his part.

Certiorari.   Heard on motion to dismiss and denied. Record quashed.

Baker, J.   This is a petition for the issuance of a writ of certiorari for the purpose of quashing a record setting out the action of the board of aldermen of the city of Central Falls, on September 23, 1915, wherein by a resolution then passed by them they found the petitioner guilty of certain charges before that time preferred against him by the mayor of said city and dismissed him as chief of police and as a member of the paid police department of said city.

The writ was issued October 14, and made returnable October 25, 1915. The respondents have appeared and have moved to dismiss the petition. The motion and petition have been heard and considered together.

The authority of the board of aldermen to remove members of the paid police department is contained in the proviso of clause 2 of § 4 of the charter of said city, which is Chapter 1421 of the Public Laws of Rhode Island, passed February 21, 1895.

The proviso is as follows: "*Provided, however,* that the members of the paid police department of said city shall not be subject to removal from office at any time except for misconduct or incapacity of such a character, as the board of aldermen may deem a disqualification for said office, and all such removals shall be by the board of aldermen, upon charges made in writing, and of which the officer complained of shall have had notice and an opportunity to be heard thereon."

The charges against the petitioner are contained in a communication from the mayor to said board, dated September 15, 1915, wherein he states that on September 13, 1915, he had suspended "James McCarthy as chief of police of said city and also as a member of the paid police department of said city for conduct unbecoming an officer and for failure to enforce the law in this, viz.:" (1) that he "wilfully and negligently failed to arrest or cause to be arrested. one William T. Mitchell for following his usual occupation on Sunday;" (2) that he "wilfully and negligently failed to arrest or cause to be arrested and to be brought before the court" six persons (whose names and addresses are given and who are described as "the owners and holders of licenses for the sale of intoxicating liquors") "for having their several and respective places of business open for business on the sixth day of September, 1915, said day being known as Labor Day," . . . "none of said persons . . . being the owner or holder of a tavern license;" (3) that he "wilfully and negligently failed to arrest or cause to

be arrested and brought before the court the persons in charge of certain club rooms which were raided by the police of said city on the fifth day of September, 1915, said day being Sunday, none of said clubs having a license as by law provided."

The mayor's communication also requested the board of aldermen to appoint a time and place for the hearing of the charges. The evening of September 21, 1915, was fixed by them as the time for such hearing, and a copy of the charges with a notice of the time and place of hearing was served on the chief of police. The hearing was had on the evening of the twenty-first and twenty-second days of September, 1915, at which the mayor was represented by counsel, as was the chief of police, and seventeen witnesses were examined. The substance of their testimony set out in the records of these meetings of the board as kept by the city clerk is part of the record certified to this court. A verbatim report of the entire testimony taken by an official stenographer of the Superior Court, certified and sworn to by him and by the city clerk has also been sent to this court.

Early in the morning of September 23 a majority of the board of aldermen voted that the charges made by the mayor against the chief of police be sustained and that "said James McCarthy be removed from the office of chief of police and dismissed as a member of the paid police department of the city of Central Falls."

The respondents urge that their action in dismissing the petitioner was an act wholly within the discretion of said board of aldermen and will not be reviewed by this court, relying in this claim upon *Donahue* v. *Town Council of Cumberland,* 25 R. I. 79. We think that this case fails to sustain the claim. The *Donahue* case was an appeal from the action of a town council dismissing a police officer. All that is decided is that an appeal will not lie in such case. Apparently the determining of the qualifications of a police officer by a town council was in some way a question discussed. In its consideration of the case the court said

"The definition of the qualifications of a police officer is a legislative, not a judicial, function, . . . and from the nature of this power no appellate court can exercise it." Of course an appeal, if allowed, would have brought up the whole matter *de novo*. The court distinctly says, however, that "If there is any irregularity in the action of the council it may be corrected by *certiorari*." We think it too much to urge upon this case as an authority that the removal of the petitioner was the exercise of a legislative and not a (1) judicial function as is apparently, though not expressly, the respondents' claim. While the power of removal from office is not essentially judicial, nevertheless when the law vesting the authority in a local body indicates that such authority shall be exercised for cause only, and expressly or by implication that the officer shall have notice of the charges against him, and shall be entitled to be heard and to offer evidence in his defence, then the proceeding is judicial in character. There is practically no conflict of authorities on this point. 5 R. C. L. 263; *Rutter* v. *Burke* (Vt.), 93 Atl. 842, 849; and this court in *Lonsdale Co.* v. *License Commissioners*, 18 R. I. 5, on page 10 has said: "For while it is true, that in general, the determination of questions of fact by an inferior tribunal is conclusive and cannot be reviewed or reversed on *certiorari*, yet by the common law the Supreme Court has power to review their proceedings upon questions of jurisdiction and questions of law, these questions being of a judicial nature."

(2)   It is clear, therefore, that in the present case the action of the board of aldermen is reviewable on *certiorari* on questions of jurisdiction and questions of law, if such questions are raised. In this case the power of removal is not without restriction, but is limited to the removal which may properly be made "for misconduct or incapacity of such a character as the board of aldermen may deem a disqualification for said office." No doubt this language gives a wide discretion to the board of aldermen in making definitions and regulations as to what shall constitute

misconduct or incapacity. Yet this discretion cannot defeat the requirement that there can only be removal from office for cause. Therefore, when a charge is made of some act (3) of misconduct or some condition of incapacity, evidence must be presented to support the charge before it can lawfully be sustained and an officer removed therefor; otherwise a removal at will and without cause would follow. The chief contention made by the petitioner in this case and strenuously urged by him is that he was found guilty and removed from office without any evidence to prove the charges upon which he was tried. As a tribunal acting in a (4) judicial capacity has no legal authority to make a finding of fact in the entire absence of evidence to support it the allegation of the petitioner raises a question of law and perhaps in a narrow sense a question of jurisdiction, as a finding under such circumstances would clearly be outside of and beyond the authority conferred upon the board. We think, therefore, that the question raised is a proper one to be reviewed on *certiorari*, if it is rightly before us. This involves inquiry as to what record the writ brings up for review. No doubt the term record in its primary sense does not include the evidence, and in some jurisdictions the court will not look into the evidence at all but will merely inspect the record of the inferior tribunal; "in other jurisdictions it is held that evidence may be brought up not for the purpose of weighing it to ascertain the preponderance, but merely to ascertain whether there was any evidence at all to sustain the decision of the inferior tribunal;" 5 R. C. L. 264. It may perhaps seem at first impression that this court has not been entirely consistent in its declaration and in its practice in this respect. But the material inconsistency is possibly more apparent than real. In *Lonsdale* v. *License Commissioners, supra,* and in *Keenan* v. *Goodwin,* 17 R. I. 649, the evidence was examined in the former case as to the question of jurisdiction, in the latter case apparently generally, and particularly as to there being "testimony tending to prove the charge." In *Maroney* v.

*City Council of Pawtucket*, 19 R. I. 3, the court held that strictly speaking the evidence before the tribunal below forms no part of the record and therefore there was no obligation to send it up. It being before the court, the latter suggested that an examination showed no competent evidence of any connection between certain alleged misconduct and the petitioner's action in office. In *Smith* v. *Burrillville Town Council*, 19 R. I. 61; *Maroney* v. *City Council, supra*, is affirmed with the statement that it has not been the practice in this State to send up the evidence, although the court has in cases examined the allegations of the petitioner as to proceedings below, which allegations sometimes contained a statement of the evidence, or an abstract thereof. The court refers to *Lonsdale Co.* v. *License Commissioners, supra*, *Keenan* v. *Goodwin, supra*, and *Rodden* v. *License Commissioners*, 21 Atl. 1020, as instances in which this had been done.

In *O'Brien* v. *Mayor and Aldermen*, 20 R. I. 49, the evidence was not before the court and the court said that if it was it could not be reviewed "no question of jurisdiction being raised." In *Lowrey* v. *Mayor of Central Falls*, 23 R. I. 354, 358, it was held "that *certiorari* does not lie to review findings of fact when any competent evidence is introduced to support the charges," which plainly implies that absence of such testimony would furnish ground for review.

In all of these cases the necessity of examining the evidence on questions of jurisdiction is recognized and in some of them a similar necessity to see if there be any competent evidence to sustain the charges.

In the recent case of *Chase* v. *City Council of Providence*, 36 R. I. 331, the evidence taken having been returned with the record, the court on page 371 says: "We have not examined said testimony with any purpose to review findings of fact. . . . We have looked into the proceedings so far as to assure ourselves that the city council in exercising its jurisdiction of removal acted upon serious and substantial

grounds supported by competent evidence and that there was just and reasonable cause for their action."

In *Keenan* v. *Goodwin, supra,* the first of the above cited cases taken chronologically, the court says: "The general rules relating to *certiorari* are, that it does not lie to review findings of fact, where any competent evidence is introduced to support them; nor to correct mere irregularities of proceeding; that it will lie to inquire whether there is any evidence to establish some essential fact; and also to review rulings upon the admission of evidence, where no other and competent evidence was introduced tending to prove a necessary finding."

Considering these cases together this rule seems fairly deducible, viz.: that as a writ of *certiorari* does not lie to review findings of fact, this court will not under it ordinarily examine or consider the evidence, but that it will do so, in so far as may be necessary to determine whether or not the inferior tribunal had jurisdiction in the premises, or whether or not there is any competent evidence to support the charges, and whether or not the rulings admitting testimony over objection are correct, where there is no other and competent evidence to support the charges, and that for these last enumerated purposes the evidence may be brought up with the record. This rule is, we believe, supported by the weight of modern authority, is sound in principle and tends to promote the attainment of justice by judicial review within the limits named of such proceedings. Any other view tends to render in some cases the arbitrary and unlawful action of inferior tribunals unreviewable and irremediable.

In the present case the evidence taken at the hearing before the board of aldermen is before us and no question is made by either side as to its correctness. We think the challenge of the petitioner that there is no evidence to support the charges of misconduct on his part makes it necessary to examine the evidence to see if there is any competent evidence in order that we may determine the

legality of the action of the board.  We have examined the evidence therefore with only this object in view.  The charges are of misconduct "for failure to enforce the law" in three specified cases or instances.  The gist of the charges is the petitioner's failure to do certain acts which it is implied he could have done and ought to have done as part of his official duties.  Both the duty and the ability to perform the acts must be shown in order to establish the charge of official misconduct.  If he did all that he could reasonably be expected to do in the premises, and if the acts required to be performed could only be done by virtue of legal process, for the granting of which no legal reason was known to exist, or if the issuance of process was refused by those having authority to do so upon his application therefor in good faith, there would be no misconduct in failing to perform the acts named in the charges.  As a result of examining the evidence, therefore, we are of the opinion that there was no evidence to sustain the decision of the board of aldermen.  The evidence shows that the petitioner promptly applied first to the clerk and then to the justice of the district court of the eleventh judicial district, in which the city of Central Falls is situated, for warrants against the persons named in the first two charges against him accompanied by a statement of evidence as contained in the police officers' reports and that both clerk and justice declined to issue warrants against those persons.  The justice and clerk both testified to this.  As to these charges there is no evidence of dereliction of duty on the part of the petitioner.

As to the third charge, if it be assumed that the evidence shows clearly, as it does not, what persons were in charge of the two Polish club rooms raided on Sunday, September 5th, there is no evidence justifying the arrest of anyone or on which it could reasonably be expected to convict the persons supposed to be in charge of said rooms either of keeping intoxicating liquors for sale or of selling the same or of any other offence.  It does appear that after the seizure of

liquors in the club rooms on search warrants issued on petitioner's application, he instituted proceedings for the forfeiture of the liquors so seized, caused one man from each club room to be summoned upon the forfeiture proceedings, that both personally and by instructions to officers he endeavored to ascertain the persons responsible in the management of the clubs and was awaiting the result of the trials in the forfeiture cases to determine what, if any, further action could be taken. This was stated to be the ordinary procedure in such cases which had been followed in Central Falls and elsewhere in the State during petitioner's sixteen years connection with the police force. This testimony stands without contradiction. The forfeiture cases were assigned for trial on September 16. The petitioner was suspended, as already stated, on September 13. Upon this evidence we are of the opinion that there "were no serious and substantial grounds, supported by competent evidence, and no just and reasonable cause" for the board of aldermen to find that at the time of his suspension the petitioner had "wilfully and negligently failed to arrest or cause to be arrested" the persons referred to in the third charge.

In conformity with this opinion the respondents' motion to dismiss is denied, and it is ordered that the record of said board of aldermen of September 23, 1915, whereby they sustain certain charges of the mayor of Central Falls and removed said petitioner from the office of chief of police and from membership in the paid police department of said city be quashed.

*Fitzgerald & Higgins,* for petitioner.

*Wilson, Gardner and Churchill, Thomas Riley, Jr.,* for respondents.