JOSEPH F. GARVIN *vs.* JAMES M. MCCARTHY *et al.*

JUNE 22, 1916.

PRESENT: Johnson, C. J., Parkhurst, Sweetland, Vincent, and Baker, JJ.

*(1)   Police Officers.   Removal.*

The powers of the Board of Police Commissioners of the city of Woonsocket under Chapter 661, Public Laws, 1911, as amended by Chapter 902, Public Laws, 1912, so far as they relate to the removal or suspension of police officers are the same as the powers which were originally conferred upon and vested in the board of aldermen by the charter of that city, cap. 775, Pub. Laws, passed May 1, 1900, amending clause 2, § 4, Chapter 728, Public Laws, 1888.

Under these acts the Board of Police Commissioners has no power to remove a police officer except upon charges in writing of which he shall have notice and·upon which he shall have an opportunity to be heard.

*(2)   Police Officers.   Removal.*

The Board of Police Commissioners of the city of Woonsocket is authorized by the act creating it "to make all needful rules and regulations" for the efficiency, management and direction of the police department not inconsistent with the laws of the State. In pursuance of such authority the Board adopted rules relating to charges against and trials of police officers. Such rules provided for notice, charges and specifications and a trial and for various penalties upon *conviction* of certain offences. An officer was suspended for 30 days with loss of pay, without notice to him of any charges and an opportunity to meet them.

*Held,* that these rules set forth in part the conditions of a police officer's employment upon which he might rightfully rely in the continuation of his service.

*Held,* further, that the proceeding against an officer was judicial in character, because the power to hear and determine is to be exercised only after notice and a hearing on the merits, and the officer is recognized as having a right in his office of which he cannot be deprived except for proper cause ascertained by a proceeding judicial both in its form and in its consequence.

CERTIORARI.   Heard and record quashed.

VINCENT, J. This is a petition for a writ of *certiorari* brought by Joseph F. Garvin, a police officer of the city of Woonsocket, against James M. McCarthy, Aime J. Dulude and William A. Batchelor, comprising the Board of Police Commissioners of said Woonsocket, and William S. Preston, the secretary of said board. The petition was filed March 9, 1916, and a writ of *certiorari* was issued to the respondents

returnable March 20, 1916, at which time a hearing upon said petition was had.

The petition sets forth that on February 28, 1916, between one and two o'clock in the afternoon the petitioner was engaged as a traffic officer at Market Square, Woonsocket, at a point where five different public highways converge and intersect, to wit, Main, South Main, Arnold, Bernon and River streets. Where Arnold street intersects Main and South Main streets there is a steep descent and curve. While petitioner was in the performance of his duty one Lawrence Fahey, a chauffeur in charge of an automobile, in descending Arnold street into Market Square, at said point of intersection, failed to give a timely signal with his bell, horn or other device. Shortly afterwards Fahey returned to Market Square, coming from the direction of South Main street, and again omitted to signal. Petitioner thereupon spoke to Fahey, calling his attention to the omission. Fahey claimed that it was not necessary for him to signal. Petitioner told Fahey that it was a lawful requirement, but Fahey insisted that he was not required to sound his horn. Petitioner thereupon requested Fahey to call at the police station at six o'clock that evening, it being the intention of petitioner to place said matter before the lieutenant in charge of said station. At 3:30 P. M. petitioner was ordered to report at the police station and immediately complied with said order. Upon his arrival at the police station he was ordered to report before the Board of Police Commissioners, then in session at the station, and complied with that order, finding there present the respondents and Fahey. The Board of Police Commissioners then and there requested the petitioner to explain what had occurred between Fahey and himself which he accordingly did. Fahey also made a statement to the Board of Police Commissioners in the course of which he admitted that he did not sound his horn, claiming that it was not necessary for him to do so. Petitioner's attendance before the Board of Police Commissioners was of about five minutes duration

after which he was ordered to return to his post. At six o'clock P. M. on the same day when the petitioner returned to the station for roll call announcement was made by the officer in charge of said roll call that petitioner was suspended as a member of said police department for a period of thirty days, from the 29th day of February, 1916, without pay, for conduct unbecoming an officer and neglect of duty.

No notification to the petitioner, of any charges made against him, was given. No copy of charges and specifications was served upon petitioner two days before any trial thereof, nor was notice of the time of trial given the petitioner at least two days before said trial. Petitioner had no opportunity to prepare his defence against the charges and did not have the benefit of counsel in the presentation of his defence, nor was petitioner given the right to have his accusers placed under oath and the privilege of examining his accusers and of having any finding of the Board of Police Commissioners based upon competent and legal evidence. The statement of Fahey at the pretended hearing was not made under oath. Upon information and belief, in addition to the facts above stated, petitioner avers that the statement of a friend of Fahey was taken by the commissioners over the telephone after petitioner had departed from the pretended hearing, and that the commissioners proceeded summarily to pass a vote and resolution finding the petitioner guilty as aforesaid, which resulted in his being fined thirty days' pay and in his suspension from duty for a period of thirty days.

There seems to be no dispute as to such of the facts as are set forth in the petition and which are essential to the consideration of the case. The petitioner claims that under the conditions set forth in his petition, "the action of said Board of Police Commissioners in fining your petitioner and removing him from his position for a period of thirty days was illegal, unlawful and unjustifiable; that it was your petitioner's lawful right to be notified of any charges made against him, to be served with a copy of said charges and

specifications at least two days before any trial thereof, and to have notice of the time and place of trial at least two days before said trial and to have opportunity to prepare his defence against such charges and to have the benefit of counsel in the presentation of his defence, and the right to have his accusers placed under oath and the privilege of examining his said accusers and to have any finding of said Board of Police Commissioners based upon competent and legal evidence."

The charter of the city of Woonsocket, Chapter 775 of the Public Laws of Rhode Island, passed May 1, 1900, amending Clause 2, Section 4 of Chapter 728 of Public Laws of 1888, provides that: "The aldermen may appoint so many and such police officers, including the chief of police, as the ordinances of the city council may determine, which said officers shall hold their respective offices during the pleasure of the board of aldermen: *Provided, however*, that the members of the paid police department of said city shall not be subject to removal from office at any time, except for misconduct or incapacity of such a character as the board of aldermen may deem a disqualification for said office; and all such removals shall be by the board of aldermen, upon charges made in writing and of which the officer complained of shall have had notice and opportunity to be heard thereon."

The rules of the Board of Police Commissioners of Woonsocket under caption of "Charges and Trials," are as follows:

"RULE NINE.    5.    Complaints made at station houses by citizens against police officers shall be taken down in writing by the officer in charge, entered upon the journal, and transmitted to the Secretary of the Board, who shall cause charges and specifications to be framed and submitted to the Board of Police Commissioners.    In case the complainant does not appear within forty-eight hours after notice, the complaint shall be quashed.    A charge when signed shall, when deemed advisable by the Board of Police Commis-

sioners, be sent to the officer commanding, for a report thereon.

"6. Complaints made at headquarters against police officers shall be received by the Secretary, who, under the direction of the Board, may cause charges and specifiations to be framed and signed. Said charges shall, if deemed advisable by the Board of Police Commissioners, be sent to the Chief for a report thereon.

"7. Trials of police officers will be held at such times as may be ordered by the Board of Police Commissioners, and shall be held before two or more of the Commissioners unless the defendant freely consents in writing to be tried by one member of the Board, who in such case shall report his finding to the Board for action. Notice of the time and place of trial, together with a copy of the charges and specifications, shall be served on the accused party at least two days before the time of trial, including the day of service. Such notice shall be served by delivering it to the accused in person, or by leaving it at his last and usual place of abode. Witnesses shall be sworn and examined separately and apart from each other. Minutes of the evidence shall be taken for the use of the Board of Police Commissioners only."

From an examination of the provisions of the charter and rules above set forth it is evident that a police officer cannot be legally removed from his office except upon charges in writing, of which he shall have notice and an opportunity to be heard.

(1) The powers which were given to the Board of Aldermen under the charter of the city of Woonsocket, concerning the qualifications, appointment, removal, organization, compensation, term of office, discipline or control of the police, etc., were by Chapter 661 of the Public Laws, 1911, as amended by Chapter 902 of the Public Laws, 1912, conferred upon and vested in the Board of Police Commissioners.

We see nothing in the acts referred to indicating that the powers of the Board of Police Commissioners, so far as they

relate to the removal or suspension of police officers, are any different from the powers which were originally vested in and conferred upon the Board of Aldermen by the charter of the city.   In other words, we do not think that the original act as amended vests in the Board of Police Commissioners the power to remove a police officer except upon charges made in writing, of which he shall have notice and upon which he shall have an opportunity to be heard.

The Board of Police Commissioners is authorized by the act creating it "to make all needful rules and regulations" for the "efficiency, management and direction" of the police department, "not inconsistent with the laws of the State." In pursuance of such authority the rules before referred to, relating to charges and trials were adopted and promulgated by the Board of Police Commissioners and were in force and effect at the time of the alleged improper conduct of the petitioner.   These rules set forth, in part, the conditions of the petitioner's employment upon which he might rightfully rely in the continuation of his service.

The respondents undertake, in the course of their argument, to make a distinction between removal and suspension (2) and contend that if it is incumbent upon them to prefer charges in writing, etc., in case of removal, there is no such obligation on their part in cases of suspension.

The petitioner was suspended for thirty days with loss of pay during that period.   It is not important for us to consider here any questions respecting the rights of parties in cases of suspension without loss of pay as such questions are not involved in the present case.

The respondents refer in their brief to the language of Rule 5, "Complaints made at station houses by citizens against police officers shall be taken down in writing" in connection with the language of Rule 6, "Complaints made at headquarters against police officers shall be received by the Secretary, who under the direction of the Board, may cause charges and specifications to be framed and signed," etc., and argue that the use of the word "shall" in Rule 5 and the

word "may" in Rule 6 plainly indicates that the Commissioners are to exercise their discretion whether to cause charges and specifications to be made or not before taking action against the officer complained of. Omitting the words "before taking action against the officer complained of" we think this interpretation of the rules is correct. The evident purpose of the framers of these rules was to provide that a record should be made of every complaint, but that the Commissioners should not be obligated to prefer charges which in their judgment might be frivolous and unwarranted.

From further examination of the Rules and Regulations of the Board of Police Commissioners of the city of Woonsocket we find in Rule Nine, 1: "Any member of the Police Force may be punished by the Board of Police Commissioners, in its discretion, either by reprimand, forfeiture of pay for not exceeding thirty days for any one offence, by being reduced in rank, or by dismissal from the force, on conviction of any one of the following offences, to wit:" Then follows a list of the offences, including "conduct unbecoming an officer." This language certainly presupposes that something more is necessary in order to deprive an officer of his pay for thirty days than the exercise of a bare authority unsupported by sworn evidence.

The proceeding against the petitioner was judicial in character. The law upon that point is well stated in 5 R. C. L., page 263, as follows: "Where . . . the law vesting the authority either in the governor, or in some local body, or otherwise, indicates that such authority shall be exercised for cause only, and either expressly or by implication that the officer against whom the proceeding is brought shall have notice thereof, and of the charges against him, and shall be entitled to be heard and produce evidence in his defence, then the proceeding is judicial in character, because the power to hear and determine is to be exercised, as in courts, only after notice and a hearing on the merits, and the officer is recognized as having a right in his office of which he cannot be deprived, except for proper cause

ascertained by a proceeding judicial both in its form and in its consequence." ·

In *Aldermen of Denver* v. *Darrow*, 13 Colo. 460, the court in its opinion adopted the following from 1 Dill. Mun. Corp. §§ 245, 250, 253, 254: "Where the appointment is during good behavior, or where the removal can only be for certain specified causes, the power of removal cannot be exercised, unless there be a charge against the officer, notice to him of the accusation, and a hearing of the evidence in support of the charges, and an opportunity given to the party of making a defence." "The proceeding, in all cases where the amotion is for cause, is adversary or judicial in its character; and, if the organic law of the corporation is silent as to the mode of procedure, the substantial principles of the common law as to proceedings affecting private rights must be observed."

The record of the Board of Police Commissioners, now before us, covering this matter as as follows: "Officer Joseph Garvin and Lawrence Fahey, chauffeur for M. Louis B. Sweatt, appeared before the board. Mr. Fahey testifies that the officer spoke disrespectfully to him on this date, regarding what the officer termed a violation of the traffic rules, and that he swore at him. He said that he came down Arnold street, going towards South Main street, with two people in the auto with him, Mr. W. F. Barry and Mr. Thomas Condon. ·

"That he pointed with his hand to the officer, who was looking at him, designating that he was going straight ahead. That the officer did not stop him then or say anything to him, but upon his return, the officer stopped him and told him he should have sounded his horn, and during the 'call down,' he, the officer, told him he was 'too damned smart.' That the officer had been discourteous to him before, and that his employer wanted 'things straightened out.'

"Officer Garvin claimed that he was not looking at him when he came down Arnold street, and that he did not see him

point the way. Mr. Barry informed the board that Mr. Fahey did point the way, and that the officer stood looking directly at them. Garvin claimed that he had not been discourteous to him on previous occasions alluded to in the testimony.

"The board believes that Mr. Fahey and Mr. Barry are telling the truth, and officer Garvin is suspended for thirty days, with loss of pay during that period."

From this record it does not appear that any charges in writing were preferred against the petitioner of which he had notice and upon which he had an opportunity to be heard nor does it appear 'that the Board of Police Commissioners examined any witnesses under oath or had any competent and legal evidence before them upon which they could base their action.

The record of the proceedings of the Board of Police Commissioners is quashed.

*Barney, Lee & McCanna,* for petitioner.

*Francis I. McCanna, Aylsworth Brown,* of counsel.

*Elphege J. Daignault, Greene & Rousseau,* for respondent.

