**FOSTER GLOCESTER REGIONAL
SCHOOL BUILDING COMMITTEE
et al.**

v.

Steven A. SETTE et al.

No. 2008–162–Appeal.

Supreme Court of Rhode Island.

June 4, 2010.

Gregory Piccirilli, Esq., Cranston, for Plaintiff.

William A. Gosz, Esq., for Defendant.

Present: SUTTELL, C.J., GOLDBERG, FLAHERTY, and ROBINSON, JJ.

## OPINION

Justice FLAHERTY, for the Court.

The defendants, who are the four members of the Glocester Town Council[1] (town council) who voted to remove the plaintiff Gregory Laramie from his position on the Foster–Glocester Regional School Building Committee (RBC) by declaring his seat on the RBC vacant, appeal from a Superior Court judgment granting declaratory and injunctive relief in favor of the plaintiffs, the RBC, and its eight individual members.[2] The defendants contend that the Glocester Town Charter expressly empowers the town council to remove those members of the RBC whom the town council has appointed or to fill vacancies on the RBC when they arise. Alternatively, the defendants argue that if this Court holds that the town charter does not expressly grant the town council the authority to remove members of the RBC, the town council nonetheless possesses this authority by implication, because the authority to appoint a member to the RBC necessarily implies the authority to remove him or her. For the reasons set forth in this opinion, we affirm the judgment of the Superior Court.

## I

### Facts and Travel

In 1958, the General Assembly enacted Public Laws 1958, ch. 109 (the act), which authorized the formation of a regional school district encompassing the Towns of Foster and Glocester. The act also provided for the formation of a "regional district school building committee which shall consist of eight members, four of whom shall be from each member town." P.L. 1958, ch. 109, § 4. The act sets forth a method for determining the composition of the RBC as follows:

"The representation from each member town shall consist of one member from the respective local school committee and elected or appointed by said local school committee; and three members selected by the town council of such town, at least one of whom shall be from the regional school planning board of such town.

"At such time as a regional district school building committee shall be deemed necessary, the chairman of the regional district school committee shall call upon the respective officials of the member towns for the appointment or election of the necessary representatives." Id.

Under the act, the RBC's primary responsibility is to oversee the construction of new schools or the improvement of existing schools within the regional school dis-

---

1. The Glocester Town Council is composed of five members. The four members who voted to remove Gregory Laramie àre Steven A. Sette, William E. Reichert, Charles M. Poirier, and Kevin P. Walsh. The fifth member voted against Mr. Laramie's removal.

2. The eight individual members of the Foster–Glocester Regional School Building Committee are Chairman Gregory Laramie, Raymond Fogarty, George Jacques, Kelly Hunter, William Abt, Dennis Chretian, Warren Ducharme, and Julie Capobianco.

trict. *Id.* The act further provides that "[t]he term of the regional district school building committee shall be until such time as the authorized building or buildings have been constructed and accepted by the architects engaged by the committee and for one year thereafter, whereupon the term of office of said committee shall terminate." *Id.*

In 2004, pursuant to the act, the Foster–Glocester Regional School District Committee voted to create the RBC to oversee (1) the construction of a new middle school and (2) the renovation of the existing middle school for the purpose of annexing it as a new wing of the high school. In January 2005, in accordance with the act, the Glocester Town Council appointed three members to the RBC; one of those three appointees was plaintiff Gregory Laramie, who assumed the role of chairman of the RBC. It is undisputed that at some point in time thereafter, and after an intervening election, a majority of the members of the Glocester Town Council expressed dissatisfaction with Laramie. On November 1, 2007, the town council voted to remove him from his position by declaring his seat on the RBC vacant. Thereafter, on November 13, 2007, plaintiffs filed the instant action in the Superior Court, in which they sought declaratory and injunctive relief to prevent Laramie's removal from the RBC.

In their complaint, plaintiffs requested a declaration from the Superior Court that the defendant members of the town council lacked the authority to remove Laramie from his position as a member of the RBC. In the alternative, plaintiffs sought a declaration that, even if the town council members did have this authority, such a removal could occur only for cause and only after Laramie had been afforded due process—including the right to notice and a hearing. The plaintiffs also asked the Superior Court to enjoin defendants from taking further action to remove Laramie or from "otherwise interfering with the duties of the Building Committee, until a hearing on the merits in this case."

On November 15, 2007, a justice of the Superior Court granted plaintiffs' motion for a temporary restraining order. The order specified that Laramie was "reinstated to the position of Chairman of the Foster Glocester Regional School Building Committee, until further order of this Court." The order also provided that defendants were "restrained from further attempts to remove Plaintiff Laramie from his position."

Subsequently, another hearing justice conducted a hearing on the request for preliminary injunction, and on January 16, 2008, the second hearing justice issued a written decision concerning plaintiffs' request. Before beginning his analysis, the hearing justice noted that, "[a]lthough the current issue before this Court is Plaintiffs' request for preliminary injunction, the question of a likelihood of success on the merits requires this Court to analyze the same dispositive question of law that it ultimately would have to answer in its declaratory ruling." Accordingly, the hearing justice concluded that it would be appropriate for him to rule simultaneously on the request for a declaratory judgment pursuant to the Uniform Declaratory Judgments Act (G.L.1956 § 9–30–1) and on the request for an injunction pursuant to G.L.1956 § 8–2–13.

In his decision, the hearing justice concluded that, like school committees, the RBC is "an agent of the State." Accordingly, the hearing justice ruled that, "in order for the Council to have removal authority over [the members of the RBC], there must be explicit legislation to that effect." The hearing justice observed that "[t]here are no provisions in the Act, or [in] any other legislative acts, which specif-

ically grant removal authority to the Council." He thus declared that "the Council was without authority to remove Laramie from the RBC." The hearing justice also ordered that Laramie be reinstated as a member of the RBC, and he enjoined the town council from further attempts to remove him.

An order implementing the Superior Court's decision was entered on January 25, 2008; final judgment was entered that same day. The defendants filed a timely notice of appeal.

## II

### Standard of Review

 "A decision to grant or deny declaratory or injunctive relief is addressed to the sound discretion of the trial justice and will not be disturbed on appeal unless the record demonstrates a clear abuse of discretion or the trial justice committed an error of law." *Hagenberg v. Avedisian,* 879 A.2d 436, 441 (R.I.2005) (citing *DiDonato v. Kennedy,* 822 A.2d 179, 181 (R.I. 2003) and *Sullivan v. Chafee,* 703 A.2d 748, 751 (R.I.1997)). We afford great weight on appeal to the factual findings of a trial justice sitting without a jury in a declaratory judgment action. *Casco Indemnity Co. v. O'Connor,* 755 A.2d 779, 782 (R.I. 2000) (citing *Technology Investors v. Town of Westerly,* 689 A.2d 1060, 1062 (R.I. 1997)). However, we review *de novo* the trial justice's determinations of questions of law. *Houde v. State,* 973 A.2d 493, 498 (R.I.2009) (citing *Fleet National Bank v. 175 Post Road, LLC,* 851 A.2d 267, 273 (R.I.2004)).

 Our review of a hearing justice's decision on a motion for a preliminary injunction is similarly deferential. "When reviewing a hearing justice's decision to

grant a preliminary injunction, this Court applies an abuse of discretion standard of review." *New England Stone, LLC v. Conte,* 962 A.2d 30, 32 (R.I.2009) (citing *Iggy's Doughboys, Inc. v. Giroux,* 729 A.2d 701, 705 (R.I.1999)). In *Iggy's Doughboys, Inc.,* 729 A.2d at 705, we set forth the factors that this Court must consider when it reviews a trial court's grant of a preliminary injunction.

> "[I]n deciding whether to issue a preliminary injunction, the hearing justice should determine whether the moving party (1) has a reasonable likelihood of success on the merit s, (2) will suffer irreparable harm without the requested injunctive relief, (3) has the balance of the equities, including the possible hardships to each party and to the public interest, tip in its favor, and (4) has shown that the issuance of a preliminary injunction will preserve the status quo." *Id.*

## III

### Analysis

### A

### Declaratory Relief

On appeal, defendants contend that the hearing justice erred when he declared that the Glocester Town Council had no authority to remove Laramie from the RBC; it is their contention that such authority is found in the Charter of the Town of Glocester. The defendants assert that Article XIV, § C 14–2 of the Glocester Town Charter explicitly provides that the term of members of the RBC extends only until the next town council is elected, at which time the RBC members' offices are deemed to be vacant and the new town council is free to appoint new members.[3]

---

**3.** Article XIV, § C 14–2 of the Glocester Town Charter reads in relevant part as follows:

Alternatively, defendants argue that if this Court rejects their interpretation of § 14–2, common sense and Rhode Island case law recognize an implied power in the town council to remove members of committees that it has appointed.[4] The defendants further argue that, if this Court should conclude that they are correct and that they indeed are clothed with the power to remove members of the RBC, they also are free to do so without providing Laramie with notice or a hearing. The plaintiffs counter that the hearing justice correctly ruled that the charter does not, either expressly or implicitly, provide removal authority to the town council and that, even if the charter could be interpreted to include such authority, plaintiff Laramie would nonetheless be entitled to notice and a hearing before he could be removed because the charter requires that "[a]ny appointed Officer of a Board or Commission may be removed from the office by the Town Council for due cause following a public hearing." Section 14–2.

■ In general, our state constitution provides that it is the responsibility of the General Assembly "to promote public schools * * * and to adopt all means which it may deem necessary and proper to secure to the people the advantages and opportunities of education * * *." R.I. Const. art. 12, sec. 1. On the other hand, and based on the Home Rule Amendment that is set forth in article 13 of the Rhode Island Constitution, a municipality may adopt charter provisions that affect education, as long as such charter provisions are ratified by an explicit legislative act. *See Town of Johnston v. Santilli*, 892 A.2d 123, 128 (R.I.2006); *Royal v. Barry*, 91 R.I. 24, 30, 160 A.2d 572, 575 (1960) ("[N]o provision affecting education contained within a home rule charter, so called, can effectively regulate the conduct of school committees as agents of the state unless expressly validated by an act of the general assembly.").

■ The General Assembly ratified the Glocester Town Charter on June 19, 1991, in the 1991 R.I. Acts & Resolves 47. Consequently, the provisions of this legislatively ratified charter take precedence over inconsistent provisions of general state law. *See Santilli*, 892 A.2d at 129 (stating that, when there has been legislative ratification of the charter provision that conflicts with a general law of statewide application, "we view the conflicting charter provision as 'a special act [that] takes precedence over any inconsistent

---

"The term of office of all Offices, members of Boards, Commissions or Committees appointed with the approval of the Council, or appointed or elected by the Council, shall be concurrent with the term of the Council, unless otherwise provided in the Charter or by State Law. Every elected or appointed officer of the Town who is elected or appointed for a specific term shall continue to hold such office until a successor is elected or appointed and qualified. Any appointed Officer of a Board or Commission may be removed from the office by the Town Council for due cause following a public hearing."

4. To support this position, defendants principally rely on *Platt v. Prince*, 53 R.I. 492, 167 A. 540 (1933), and to a lesser extent on *Cullen*

*v. Adler*, 107 R.I. 749, 271 A.2d 466 (1970), and *Lewis v. Porter*, 78 R.I. 358, 82 A.2d 399 (1951). In our judgment, these opinions are factually distinguishable from this case and, therefore, the holdings from these cases are inapplicable. Each of these cases, *Cullen*, 107 R.I. at 750, 751, 271 A.2d at 467, *Lewis*, 78 R.I. at 362–63, 82 A.2d at 401, *Platt*, 53 R.I. at 496, 167 A. at 542, involved whether governmental bodies could remove their own employees in the absence of statutory provisions that either conferred or denied this authority. Here, Laramie, in his capacity as a member of the RBC, is not an employee of the Town of Glocester, and we do not consider the holdings of *Cullen*, *Lewis*, and *Platt* to apply here.

provisions of the general laws'") (quoting *Local No. 799, International Association of Firefighters AFL–CIO v. Napolitano,* 516 A.2d 1347, 1349 (R.I.1986)). However, the act is not a provision of general state law. *Id.* The act is limited to regional school issues in the Towns of Foster and Glocester, and it cannot be fairly characterized as a general state law. Therefore, in the event of a conflict, we do not consider the Glocester Town Charter's provisions to take precedence over a more specific provision of the act.

Our initial consideration is to determine whether there are any provisions in the charter that would empower the town council to remove members of the RBC. "[W]hen we interpret the meaning of a charter provision, we apply the same *de novo* standard of review that we use when faced with questions of statutory construction." *Santilli,* 892 A.2d at 127. This Court construes the provisions of a municipal charter in accordance with the customary rules of statutory construction. *Felkner v. Chariho Regional School Committee,* 968 A.2d 865, 870 (R.I.2009) (citing *Santilli,* 892 A.2d at 127). "[W]hen the language of the [charter] is clear and unambiguous, the court must interpret it literally, giving the words of the [charter] their plain and ordinary meanings." *Stewart v. Sheppard,* 885 A.2d 715, 720 (R.I. 2005) (quoting *Labor Ready Northeast, Inc. v. McConaghy,* 849 A.2d 340, 345 (R.I. 2004)).

"However, when a statute is susceptible of more than one meaning, we employ our well-established maxims of statutory construction in an effort to glean the intent of the Legislature." *Town of Burrillville v. Pascoag Apartment Associates, LLC,* 950 A.2d 435, 445 (R.I.2008) (quoting *Unistrut Corp. v. State Department of Labor and Training,* 922 A.2d 93, 98–99 (R.I.2007)). We construe municipal

charters "so as to give, so far as possible, reasonable meaning and effect to all parts of the section in question." *Stewart,* 885 A.2d at 720 (quoting *Carter v. City of Pawtucket,* 115 R.I. 134, 138, 341 A.2d 53, 56 (1975)). Finally, this Court also adheres to the rule of statutory construction that when faced with "competing statutory provisions that cannot be harmonized, we adhere to the principle that 'the specific governs the general * * *.'" *Felkner,* 968 A.2d at 870 (quoting *Morales v. Trans World Airlines, Inc.,* 504 U.S. 374, 384, 112 S.Ct. 2031, 119 L.Ed.2d 157 (1992)).

The defendants assert that § 14–2 of the charter authorizes the town council to purge members of the RBC that were appointed by that body. Alternatively, defendants argue that the town council did not remove Laramie from the RBC but merely filled a vacancy on the RBC that was created by operation of law when the newly elected town council took office in 2007. To support their argument, defendants maintain that § 14–2's language that "[t]he term of office of all * * * members of * * * Committees appointed with the approval of the Council * * * shall be concurrent with the term of the Council, unless otherwise provided in the Charter or by State Law" necessarily implies that Laramie's appointment, which began in 2005, expired in 2007 when the term of the town council that appointed him came to an end. Consequently, defendants advance that when the town council voted to vacate Laramie's membership on the RBC in 2007, it was well within the authority that the Glocester Town Charter granted to it.

In conducting our analysis, we first consider the plain meaning of the charter. *See Stewart,* 885 A.2d at 720. Section 14–2 of the charter bestows upon the town council broad authority to appoint members of boards, commissions,

committees, and offices of the Town of Glocester for the term of the council. This same section also provides the town council with the power to remove such officers for due cause after a public hearing. The charter does not define the terms boards, commissions, committees, or offices. However, an examination of Article XIV of the charter in its entirety reveals that it describes positions that are unquestionably town offices and that perform functions that are unquestionably municipal in nature. In our opinion, the RBC is not a town office, and even though state law cloaks the town council with the authority to appoint members to the RBC, neither the charter nor state law empower the town council to remove a member of the RBC once he or she has been appointed. Moreover, in our opinion, the terms for members of the RBC that are appointed by the town council are not concurrent with the term of the town council because the RBC is not an "office" within the Town of Glocester and, therefore, § 14–2's provision that all appointments made by the town council "shall be concurrent with the term of the Council" is inapplicable to the RBC.

The Glocester Town Charter was ratified more than thirty years after the passage of the act that authorized the creation of the Foster–Glocester Regional District School. Yet, the charter's plain language does not impart to the town council the authority to remove the members ,of the RBC. We will not assume that the town council possesses the authority to remove a member of a regional school body, such as the RBC, in the absence of legislation that expressly grants that authority. *See Santilli*, 892 A.2d at 128 (reiterating that educational provisions in home rule charters cannot "regulate the conduct of school committees * * * unless expressly validated by an act of the general assembly"). In our opinion, the charter does not bestow upon the town council the authority to remove members of the RBC. Further, we interpret the phrase "members of Boards, Commissions or Committees appointed with the approval of the Council" in the charter to refer only to those "Boards, Commissions or Committees" of the Town of Glocester. The RBC is not a committee of the Town of Glocester and its members are not subject to the same removal authority as those members of "Boards, Commissions or Committees" of the Town of Glocester who perform functions in the municipal government.

■ Having determined that the municipal charter does not authorize the town council to remove members of the RBC, we next turn our attention to state law. As we set forth earlier in our analysis of the Glocester Town Charter, this Court considers the act's language to determine whether it is clear and unambiguous. *Stewart*, 885 A.2d at 720. If it is, we must interpret the act literally and confer the act's words "their plain and ordinary meanings." *Id.* (quoting *Labor Ready Northeast, Inc.*, 849 A.2d at 345).

■ The relevant provisions of the act that address the role of the Glocester Town Council with respect to the replacement of the RBC members it appoints are contained in P.L.1958, ch. 109, § 4. That section provides that the Glocester Town Council has the prerogative and responsibility to appoint three members to the RBC. It further provides that in the event of a vacancy in any of those three positions, the Glocester Town Council may appoint a new member to fill the vacancy. However, the act is silent as to whether any member of the RBC can be removed from office. Also, the statute sets a term for the life of the RBC but does not pro-

vide a specific term for its members.[5]

In our opinion, and giving the act's words "their plain and ordinary meanings," nothing in the act authorizes the Glocester Town Council to remove RBC members whom they have appointed. *Stewart*, 885 A.2d at 720 (quoting *Labor Ready Northeast, Inc.*, 849 A.2d at 345). Our interpretation of the act is buttressed by the fact that the General Assembly did not provide any authority to the Glocester Town Council to remove members from the RBC, but merely to appoint members and replace members in the event of a vacancy. In our opinion, the language of the act is clear and unambiguous and it contains no provision that would be interpreted as providing removal power. *See Stewart*, 885 A.2d at 720. It was certainly within the province of the General Assembly to grant that power had it chosen to do so.

Consequently, we hold that plaintiff Laramie's seat on the RBC was not vacated when the new Glocester Town Council took office in 2007 and that the Glocester Town Council lacks the authority to remove Laramie from the RBC.

## B

### Injunctive Relief

As we have said above, our review of a hearing justice's granting of a preliminary injunction is deferential. *New England Stone, LLC*, 962 A.2d at 32. Here, the hearing justice entered an order and a judgment on January 25, 2008, in which the court granted plaintiff's motion for a preliminary injunction and held that the "Glocester Town Council is hereby enjoined and restrained from any further attempts to remove Laramie from the RBC." The defendants contend that the hearing justice should not have ordered that Laramie be reinstated as a member (and indeed as chairman) of the RBC and should not have enjoined the Glocester Town Council from further attempts to remove him from his position. In so ordering, the hearing justice based his decision on his conclusion that the town council did not have the authority to remove Laramie from the RBC. As we explained above, we agree with the hearing justice and hold that the town council was without authority to remove Laramie from the RBC.

Further, we are persuaded that the hearing justice did not abuse his discretion when he granted a preliminary injunction that enjoined the defendants from engaging in further attempts to remove Laramie from the RBC. At the preliminary injunction stage, the plaintiffs established a reasonable likelihood of success on the merits and demonstrated that they would suffer irreparable harm without the requested injunctive relief, that the balance of equities weighed in their favor, and that the issuance of a preliminary injunction served to preserve the status quo. *See Iggy's Doughboys, Inc.*, 729 A.2d at 705. At the same time, having declared that the Glocester Town Council has no authority to remove members of the RBC, it is our opinion that the need for injunctive relief no longer exists, and, solely on that basis, we vacate the injunction.

## IV

### Conclusion

For the previously articulated reasons, we affirm the Superior Court's declaration

---

**5.** Public Laws 1958, ch. 109, § 4 provides, in relevant part, that "[t]he term of the regional district school building committee shall be until such time as the authorized building or buildings have been constructed and accepted by the architects engaged by the committee and for one year thereafter, whereupon the term of office of said committee shall terminate."

that the Glocester Town Council was not empowered to remove the plaintiff Laramie from the Foster–Glocester Regional School Building Committee. We vacate the grant of a preliminary injunction and remand the record to the Superior Court.

Justice INDEGLIA took no part in the consideration or decision of this appeal.

ROBINSON, J., dissenting in part.

I respectfully dissent from the majority's affirmance of the Superior Court's declaration that the Glocester Town Council was entirely without authority to remove Gregory Laramie from the Foster–Glocester Regional School Building Committee. In my view, the Glocester Town Charter grants the town council the authority to remove (albeit only for due cause and after notice and a hearing) the three members of the building committee whom the town council has appointed.

While I recognize that it is a close question and while the majority has articulated its position in an (almost) convincing manner, at the end of the day I conclude that I must disagree with the majority's interpretation of the following particular provision within Article XIV, § C 14–2 of the Glocester Town Charter:

"Any appointed Officer of a Board or Commission may be removed from the office by the Town Council for due cause following a public hearing."

In contrast to the majority's restrictive reading of that provision, it is my view that each member of the building committee whom the town council has appointed *does* fall within the category of an "appointed Officer of a Board or Commission" as that term is used in the town charter.

I consider highly significant the fact that it is elected officials of the *towns* of Foster and Glocester to whom the General Assembly has given the responsibility "for the appointment or election of the necessary representatives." *See* P.L.1958, ch. 109, § 4. Given the fact that three members of the building committee were appointed by the Glocester Town Council, I consider the status of those members to be quite comparable to the status of the appointed members of any other board or commission within the Town of Glocester.[6] *See generally Town of Johnston v. Santilli,* 892 A.2d 123, 131 (R.I.2006). It is therefore my considered judgment that the Glocester Town Charter vests the town council with the authority to remove for due cause members of the building committee whom it has appointed.[7]

---

**6.** I employ the expression "quite comparable" so as to candidly express my awareness that the Glocester Town Charter does not explicitly refer to appointees to a committee, whether regional or purely local. There is wisdom in the ancient maxim that "all comparisons are imperfect," but I nevertheless believe that the members of the building committee who were appointed by the town council are entitled to no less (and no more) claim on their office than are the town council's other appointees.

**7.** The language of the charter is laudably consistent with due process principles—since it expressly provides that appointed officers of boards or commissions may be removed from office only "for due cause following a public hearing." Glocester Town Charter Article XIV, § C 14–2; *see Riccio v. Town Council of Bristol,* 109 R.I. 431, 439, 286 A.2d 881, 886 (1972) ("[T]here are numerous Rhode Island cases which hold that such officer is entitled to the procedural due process of written specifications of charges, an opportunity to be heard thereon, and to offer evidence in his behalf."); *see also Mellor v. Leidman,* 100 R.I. 80, 85, 211 A.2d 633, 637 (1965); *Davis v. Cousineau,* 97 R.I. 85, 90, 196 A.2d 153, 156 (1963); *Narragansett Racing Ass'n, Inc. v. Kiernan,* 59 R.I. 79, 82–83, 194 A. 49, 51 (1937); *Hanna v. Board of Aldermen of Pawtucket,* 54 R.I. 392, 395–97, 173 A. 358, 358–60 (1934); *Garvin v. McCarthy,* 39 R.I. 365, 371–72, 97 A. 881, 882–83 (1916); *McCarthy v. Board of Aldermen of Central Falls,* 38 R.I. 385, 390, 95 A. 921, 923 (1915); *see generally*

That being said, I wish to recall the pertinent insight of Justice Louis D. Brandeis, who once made the following observation to Justice Robert H. Jackson with respect to how he (*i.e.*, Justice Brandeis) viewed his own decision-making as a member of the United States Supreme Court:

> "[T]he difficulty with this place is that if you're only fifty-five percent convinced of a proposition, you have to act and vote as if you were one hundred percent convinced. * * * You've got to decide the case one way or the other. Therefore the result oftentimes doesn't reflect the residue of doubt that remains in the minds of the men [and women] who've decided it." Melvin I. Urofsky, *Louis D. Brandeis: A Life* 836 n.474 (2009).

In accordance with that especially perceptive observation about the nature of the judicial decisional process, I readily recognize that this is an extremely close case, and I genuinely respect the reasonableness of the majority's position. However, reasonable minds can differ; and, after much reflection, I simply disagree with the majority's affirmance of the Superior Court's declaration that the Glocester Town Council had no authority to remove Mr. Laramie from the Foster–Glocester Regional School Building Committee. In my judgment, the town charter vests the town council with such authority, albeit subject to certain significant provisos, as discussed *supra.*

For these reasons, I very respectfully dissent.

Henry J. Friendly, *"Some Kind of Hearing,"*

123 U. Pa. L.Rev. 1267, 1280–81 (1975).