## OPINION TO THE GOVERNOR.

Under the provisions of section 3 of article X of the constitution of the State, the following opinion of the justices of the Supreme Court was delivered to the governor May 1, 1901, in the matter of

## THE NEWPORT POLICE COMMISSION.

The board of police commissioners of the city of Newport is a State board or commission within the spirit as well as the letter of Gen. Laws cap. 17, § 4, providing that the attorney-general, whenever requested, shall act as the legal adviser of all State boards and commissions.

*To His Excellency William Gregory, Governor of the State of Rhode Island and Providence Plantations :*

We have received from your excellency the following question, viz.: "Is the Board of Police Commissioners for the City of Newport a State Board or Commission within the meaning and intent of section 4 of chapter 17 of the General Laws ?"

The section referred to is as follows :

"The attorney-general, whenever requested, shall act as the legal adviser of all state boards and commissions and the officers thereof, of all commissioners appointed by the general assembly, of all the general officers of the state, and of the state auditor, in all matters pertaining to their official duties, and shall institute and prosecute, whenever necessary, all suits and proceedings which they may be authorized to commence, and shall appear for and defend the above-named boards, commission, commissioners, and officers, in all suits and proceedings which may be brought against them in their official capacity."

In response to the question propounded, we have the honor to submit the following reply :

When the constitutionality of the act creating a board of police commissioners was before this court in *City of Newport* v. *Horton*, 22 R. I. p. 209, the court adopted in the opinion then rendered the language of Staples, J., in *Burch* v. *Hardwicke*, 30 Gratt. 38, as follows :

"The distinction recognized in all of them is between officers whose duties are exclusively of a local nature and officers appointed for a particular locality, but yet whose duties are of a public or general nature. When they are of the latter character they are State officers, whether the legislature itself makes the appointment or delegates its authority to the municipality." . . . "The instrumentalities by which these objects are effected, however appointed, by whatever name called, are agencies of the State, and not of the municipalities for which they are appointed or elected."

In *Kelley* v. *Cook*, 21 R. I. p. 29, this court decided that police officers "are to be regarded as public or state officers with such powers and duties as the state confers upon them." "It is important," says Judge Dillon (1 Mun. Corp. 4th ed. § 58) "to bear in mind the distinction between state officers— that is, officers whose duties concern the state at large or the general public, although exercised within defined territorial limits—and municipal officers whose functions relate exclusively to the particular municipality. The administration of justice, the preservation of the public peace, and the like,

although confided to local agencies, are essentially matters of public concern, while the enforcement of municipal by-laws, the establishment of gas-works, of water-works, the construction of sewers, and the like are matters which pertain to the municipality as distinguished from the state at large."

In *People* v. *Curley*, 5 Col. p. 419, the court says: "A popular but mistaken impression prevails to some extent that all civil officers whose duties embrace municipal laws, ordinances, and regulations are purely local in their character, and have no general relation to the body politic or the State.

" It must be borne in mind that there is a legal distinction between State officers—that is officers whose duties concern the State at large or the general public, although exercised within defined limits—and municipal officers strictly, whose functions relate exclusively to the particular municipality."

Again, in *Britton* v. *Steber et al.*, 62 Mo. 374, the court says:

" There is a recognized distinction between State officers whose duties concern the State at large, or the general public, although exercised within defined territorial limits, and municipal officers whose functions relate exclusively to the particular municipality. (Dill. Mun. Corp. § 33.) A State officer may be connected with some of the municipal functions, but he must derive his power from a State statute and execute his powers in obedience to a State law."

In *Burch* v. *Hardwicke, supra*, it is said that: " The reason is that while they are elected or appointed for the city, and while their jurisdiction is confined to local limits, their duties and functions in a measure concern the whole state. They are state agencies or instrumentalities operating to some extent through the medium of city charters in the preservation of the public peace and good government. However elected or appointed, however paid, they are as much state officers as constables, justices of the peace, and commonwealth's attorneys, whose jurisdiction is confined to particular counties. . . ."

"Among the thousands of citizens and strangers that enter a great city in the course of a year in pursuit of business or pleasure, there is not one that is not interested to a greater or less degree in this officer (the chief of police) not only as a conservator of the peace generally, but in the special protection he affords against violence and wrong. When the mob rages in the streets, when the incendiary and the assassin are at work, they do not offend against the city, but against the state. When they are detected and arrested it is by the chief of police and his subordinates, under the authority of the state ; and when they are tried and convicted, it is by officers representing the state and her sovereign power."

These cases seem to us to be decisive of the construction to be given to the words "all State Boards and Commissions," in the statute upon which our opinion is now desired.

It must be conceded that the words "state boards and commissions" are broad enough to include the board in question ; nor could the contrary contention be successfully maintained. Undoubtedly the specific question which arises here was not before the legislature when chapter XVII, General Laws, was enacted, for this police commission was not then in existence, but it would be difficult to frame an expression more comprehensive in its terms than "all State Boards and Commissions" if it had been then in existence.

The commissioners are appointed by the governor by and with the advice and consent of the senate (chapter 804, Pub. Laws). The city authorities have no control over their appointment, removal, compensation, duties, or term of office. By section 3 of the act each member of the board, as well as each member of the police force under their control, is a member of the State police (Gen. Laws cap. 102, § 17). As such member of the State police it is his duty under the law "to see that the laws of the state are observed and enforced within their respective counties and towns," under penalty of a fine not exceeding $500 and consequent ineligibility to re-appointment to office, and surely no duty can be more general and all-pervading than this.

By cap. 1059, Pub. Laws, passed in 1892, the attorney-

general was made the legal adviser of the State board of charities and corrections, whose duties are thus defined, Gen. Laws, cap. 291, § 4 :

"The oversight, management, and control of the state farm in Cranston, of the state workhouse and house of correction, state asylum for the incurable insane, and state almshouse thereon, together with the state prison and the jail in the county of Providence, shall be vested in the board of state charities and corrections."

It will be seen that this board is charged only with those duties which relate to the State institutions and their inmates, and that its jurisdiction is limited to the town of Cranston.

The attorney-general is also the legal adviser of the State board of health, but its duties are limited to those which concern the health of man and beast. (Gen. Laws cap. 96, §§ 2 and 3.)

The State board of education is also under the advice of this officer, and its duties are largely indicated by its name and are defined in Gen. Laws cap. 51, § 1.

In like manner examination of the duties imposed upon other State boards shows in each case that while their territorial jurisdiction is generally coincident with the State lines, yet that they are charged with duties relating only to certain definite and restricted subjects, such as the public health and the public education, or to certain classes in the community, as pharmacists, dentists, and physicians, while this board of police commissioners is directly charged with the enforcement of all the laws of the State in a city having more than 20,000 inhabitants, including offences concerning which these several boards are also given concurrent jurisdiction in many cases. See Gen. Laws cap. 170, § 40, as to commissioners of shell fisheries ; Gen. Laws cap. 171, § 35, as to commissioners of inland fisheries ; Gen. Laws cap. 68, § 3, as to factory inspectors ; Pub. Laws cap. 678 and 684 (Jan. Session, 1899), as to bird commissioners.

It is difficult to understand the principle by which the attorney-general is held to be the adviser of one board created

by the State and having charge of violations of certain State laws, and should not be the adviser of another board also created by the State and charged with the same duties.

While their jurisdiction and their duties are territorially limited to the city of Newport, these duties are clearly of general concern, and they discharge a State function rather than a municipal function.

It follows that the State, having thus appointed these officers (for the preservation of the public peace) by the concurrent action of the executive and the senate, and having conferred upon them the gravest duties under severe penalty for neglect or refusal to discharge those duties, is bound in law no less than in morals to furnish these officers with all adequate and necessary means and agencies for the discharge of the duties so imposed. And among these agencies and means is competent advice as to the scope of the duty so imposed and the means of discharging it.

Nor is it a sufficient reply to say that provision to this end may be wisely and safely left to the local authorities.

If experience of the recent past were lacking, it would nevertheless not be difficult to see that the due and orderly enforcement of the law is most likely to be hampered and interfered with by a division of the responsibility therefor between local and State agencies. These officers being thus created, the State ought not to be made dependent for the discharge of their duty upon local indifference or opposition, or those chance mutations in municipal politics often arising from causes as insubstantial in reality as they are ephemeral in their duration. For it is not unlikely that the local authorities may refuse to support voluntarily an officer by additional local taxation for the purpose of assisting officers appointed by the State, over whom they have no control and to whom they owe no such duty, but for whose compensation they alone are taxed. And this may be done without redress on the part of the board and without protection on the part of the State.

We are accordingly of the opinion that this board of police commissioners is a State board within the spirit as well as

within the letter of the act, and that the question submitted should be answered in the affirmative.

PARDON E. TILLINGHAST,
GEORGE A. WILBUR,
HORATIO ROGERS,
WILLIAM W. DOUGLAS,
EDWARD C. DUBOIS,
JOHN T. BLODGETT.