## HOWARD H. EATON *vs.* TOWN COUNCIL OF THE TOWN OF WARREN.

JULY 2, 1932.

PRESENT: Stearns, C. J., Rathbun, Sweeney, Murdock, and Hahn, JJ.

STEARNS, C. J. This is a petition for a writ of *certiorari* directed to members of the town council and the town clerk of Warren requiring the production of the records relating to the removal of the petitioner from the permanent police force and the abolishment of his office. The writ was issued and the records have been produced.

The paid police force of said town, appointed under authority of Chapter 1290, P. L. 1905, consists of a chief of police and four patrolmen. The petitioner was appointed a patrolman June 10, 1930. At a meeting of the town council March 21, 1932, a resolution was adopted appointing the regular patrolmen but petitioner was not reappointed. At a subsequent meeting of the town council on March 31, a resolution was passed in which, after stating that there was a depression in business in the town and that large amounts of taxes were unpaid, it was resolved "that the office of patrolman now held by Howard H. Eaton, being a junior man in point of service, be and the same is hereby abolished." Petitioner is ready, willing and able to perform his duties but is not permitted to serve as a patrolman. It is admitted

that the petitioner is an efficient and faithful patrolman. The only question is, has the town council power to abolish, for the reason of economy, the office of a member of the permanent police force appointed by virtue of Chapter 1290, Public Laws 1905. The statute is entitled: "An Act Authorizing the Town of Warren to Establish a Permanent Police Force" and is as follows: "Section 1. The town council of the town of Warren may appoint so many and such police officers, including the chief of police, for service in said town as by ordinance the said council may from time to time determine, which said officers, including those already appointed, shall hold their respective offices until vacated by death or resignation, except as hereinafter provided; and the president of said council may at any time suspend any such officer from his office until the adjournment of the next meeting of said council, at which meeting he shall report any and all such suspensions, with his reasons therefor: Provided, however, that any one or more of the police officers so appointed shall be subject to removal from office by the said council at any time for misconduct or incapacity of such a character as the said council may deem a disqualification for said office; and all such removals shall be by the said council upon charges made in writing, and of which the officer complained of shall have notice and opportunity to be heard thereon: Provided, further, however, that nothing in this section shall be construed to apply to any police officer or constable other than the members of the paid police department of said town of Warren."

The status of police officers in this State has now been well defined. Police officers are appointed to perform a state duty, not a purely municipal duty. In preserving the peace and enforcing the laws of a town or city they are acting for all the inhabitants of the state and not merely for those of a particular community. In appointing them a municipal corporation exercises one of the functions of government in which the municipal corporation has no exclusive interest and from which it derives no special benefit. The general

assembly has the right to determine the control of the police and may provide for the payment of a local police department out of the local funds of a municipal corporation. *Kelley* v. *Cook,* 21 R. I. 29; *City of Newport* v. *Horton,* 22 R. I. 196; *Horton* v. *City of Newport,* 27 R. I. 283; *City of Providence* v. *Moulton,* 52 R. I. 236. The sheriffs and their deputies, town sergeants, constables and chiefs of police of towns and cities are a part of the state police force. (G. L. 1923, C. 128, s. 3.)

The respondent contends that, subject to any limitations that may be imposed by statute or charter, the office of a member of the paid police department may be abolished by a municipal corporation or the membership of the department may be reduced for economic reasons. Without questioning the soundness of this general proposition, the question in every case is one of the power and authority of the municipality to act. The power of the general assembly to determine the tenure of office of a member of the state police cannot be questioned.

In considering Chapter 1290 the title of the act which authorizes a permanent police force is significant. It is expressly provided in the act that the members of this police force "shall hold their respective offices until vacated by death or resignation", except when removed for cause.

The provisions of the act are clear and do not require construction. To sustain the contention of respondent it would be necessary by implication to add a clause permitting the town to change the tenure of office fixed by the statute for economic reasons which may be merely temporary. We find no basis for any such implication in this statute. To add such a provision by implication would tend to defeat the purpose of the statute which is to provide a permanent and not a changing police force. The failure of the town council to reappoint the petitioner did not vacate his appointment. *Lowrey* v. *Board of Aldermen of Central Falls,* 23 R. I. 284.

The purpose of this and similar acts is to secure the highest degree of efficiency in the department by making merit the basis of retention in office and by guarding the interests of the public by permitting dismissal from office for cause only. See *Girouard* v. *Board of Police Commissioners of Central Falls,* 52 R. I. 47. Proper economy in municipal administration should be encouraged. The question is really one of the method of securing such economy. The respondent has a ready means of securing relief by application to the general assembly for a modification of the act. In fact such a procedure has already been approved on the motion of the town of Bristol. A similar act on application of that town to the general assembly was amended April 7, 1932 so as to permit a reduction in the number of officers in the paid department (but not including the chief of police) for reasons of economy.

The statute does not require the town to create a permanent police department nor is the town obliged to appoint more officers on the permanent force than it needs. Having exercised its discretion as to the number of appointments, the requirements of the statute as to permanency of tenure become operative. The action of the town council in attempting to abolish the office of patrolman filled by petitioner was without authority and is invalid.

So much of the record as relates to the removal of petitioner from office is quashed.

*William H. McSoley,* for petitioner.
*Frank F. Pinkos,* for respondents.