CLINTON L. DAVIS *vs.* JAMES E. COUSINEAU.
HOWARD T. MOFFETT *vs.* WILLIAM A. ORME.
GEORGE M. GLEAVEY *vs.* FRANK WHORF.

DECEMBER 12, 1963.

PRESENT: Condon, C. J., Roberts, Powers and Joslin, JJ.

JOSLIN, J. These are petitions in equity in the nature of quo warranto, brought in this court under G. L. 1956, §10-14-1, to determine as between the respective petitioners and respondents the title to certain offices in the city of Warwick. Each respondent filed an answer and each petitioner replied thereto joining issue. The parties having filed a formal stipulation containing an agreed statement of facts, we have for our determination only legal issues, namely, whether the petitioners are lawfully entitled to hold the offices in question.

Petitioners Davis and Moffett claim membership on the board of public safety of the city of Warwick, hereinafter referred to as the board, by virtue of appointment thereto under P. L. 1960, chap. 150, hereinafter referred to as the charter.

Petitioner Gleavey claims the office of deputy chief of police of Warwick as a result of appointment thereto by the board.

Between May 1 and May 31, 1963 Horace E. Hobbs was mayor of Warwick and petitioners Davis and Moffett together with George B. Salter were members of the board.

Commencing on May 1, 1963 a dispute arose between the mayor and the board as to which of the two had the power under the charter to fill vacancies in the police department. On May 31, 1963 the board held a special meeting at which the mayor, though not invited, was in attendance. When it became apparent that the board intended to fill such va-

cancies the mayor presented to petitioners Davis and Moffett discharges dated May 31, 1963 reading as follows:

"You are hereby discharged from the office of member of the Board of Public Safety. The office is hereby declared vacant.

Very truly yours,
[signed]   Horace E. Hobbs
HORACE E. HOBBS
MAYOR
[signed]  Mayor"

The board, notwithstanding the foregoing events, continued its meeting and elected Joseph Gallucci to be chief of police, although he had previously been appointed by the mayor on May 2, 1963 to fill that position commencing June 1, 1963. Thereupon commissioner Salter left the meeting. Petitioners Davis and Moffett remained and proceeded to elect petitioner Gleavey as deputy chief of police. No contention is here made that, if not disqualified to act by virtue of their dismissal by the mayor, they did not constitute a quorum for the conduct of any business properly before them.

Thereafter petitioner Gleavey reported for duty as deputy chief, but relinquished his indicia of office upon demand of the mayor and pending judicial determination as to whether he or respondent Frank Whorf previously appointed by the mayor to fill that office is entitled thereto. On June 5, 1963 access to the offices of the board was denied petitioners Davis and Moffett by the chief of police acting pursuant to orders of the mayor. Thereafter we granted the applications of petitioners to file their petitions in the nature of quo warranto and gave our consent to the three cases being consolidated for hearing before us.

We shall first consider the petitions of the members of the board. The issues are the same in each case and we shall discuss therefore only the case of petitioner Davis who was appointed to the board on January 18, 1962 for a term

of three years. Our conclusions, however, shall apply equally to the case of petitioner Moffett.

Petitioner Davis contends that in the performance of his duties he acts to preserve and enforce the laws of the municipality for the benefit of all the inhabitants of the state and that he was appointed to perform a state and not a municipal duty. Premised on the foregoing, he concludes that his status as a state or public officer is a bar to his removal by the mayor in the absence of a specific charter provision vesting authority so to do in that officer and cites as authority for such conclusion *State* v. *Wax,* 83 R. I. 319, 327; *Eaton* v. *Town Council,* 52 R. I. 449; *Horton* v. *City Council,* 27 R. I. 283; *Opinion to the Governor,* 22 R. I. 654. We question neither the soundness of the rule suggested nor the authorities relied on, but these cases, as this court said in *Chace* v. *City Council,* 36 R. I. 331, 347, "do not support his position that such an officer may not be removed from office by action of the municipal authorities."

The question here, therefore, becomes whether the power to remove has been granted by the charter to the mayor for, as this court said in *Eaton, supra,* "the question in every case is one of the power and authority of the municipality to act."

The charter provides in article 3-3 (1) that the mayor shall have the authority to remove "all officers and employes of the city * * *." The petitioner contends that such article should be construed by us as limiting the mayor's authority of discharge to such officials as perform municipal as distinguished from state or public functions. With this contention we cannot agree.

In enacting art. 3-3 (1) the legislature in our opinion clearly did not intend to except from its provisions for removal those like the members of the board who are appointed by a municipal officer and paid by the city on the ground that their duties are state rather than municipal in

nature. While the powers and duties of the board are those of state officers, the power of appointment and removal not being otherwise provided for in the charter has under art. 3-3 (1) clearly been vested in the mayor. *Chace* v. *City Council, supra,* at page 348.

In that case the court referred to the charter provisions of the city of Providence which granted to the city council the power to appoint "an officer to be styled the chief of police * * *." It also provided that "The city council may * * * remove all officers * * *." Albeit by way of dictum the court said at page 349:

> "We are of the opinion that, in the last cited case [Norton v. Adams, 24 R. I. 97], it was perfectly clear and unquestionable that the power of removal of the chief of police by the town council was clearly delegated by the statute above quoted; just as we hold that it is equally clear that in the charter of the city of Providence as above quoted the power of removal of the chief of police was originally delegated to the city council, under the words 'all officers.'"

On this authority, we conclude that the mayor had the power to remove Davis, who had been appointed for a fixed term. But this does not mean that such removal could be at the whim or caprice of the mayor or at his pleasure.

The charter provides otherwise. Article 3-3 (1) limits and restricts the exercise of that power to those instances where removal is "necessary for the good of the service * * *." That such legislative expression is not without significance was determined by us recently in *Aniello* v. *Marcello,* 91 R. I. 198, where this court construed a statute granting to the appointing authority the power to remove for "the good of the service * * *." We there equated "for 'the good of the service'" with the phrase "for cause" and held that the power to remove for the "good of the service" can be validly exercised only if legal cause exists therefor.

Respondent Cousineau relying on *Smith* v. *Soucy*, 46 R. I. 417, contends, however, that "for the good of the service" is the equivalent of "may be removed" by the appointing authority "for such cause as he shall deem sufficient * * *." That case is clearly distinguishable for the equation drawn by respondent between the language of the statute there interpreted and that of the provision here in issue is not compelling. The language "for such cause as he shall deem sufficient" makes the criteria for removal the judgment of the appointing authority "in regard to the sufficiency of the cause" and not that of the judiciary which may review to determine the sufficiency thereof. That is not here the case where the phrase "good of the service" imparts as we held in *Aniello* that type of cause which in law constitutes a valid ground for the exercise of the power to remove.

Having determined that petitioner could be removed only if legal cause existed therefor, it follows that he was entitled to a specification of charges, due notice of a hearing, and an opportunity to be heard and offer evidence in defense or explanation. *Aniello* v. *Marcello, supra.* Stated otherwise, it is required that the proceedings be judicial in character. *Garvin* v. *McCarthy*, 39 R. I. 365, 371. These requirements exist as conditions precedent even in absence of a statute providing therefor. *Norton* v. *Adams,* 24 R. I. 97; 2 Dillon, Municipal Corporations (5th ed.) §480, p. 808; 4 McQuillin, Municipal Corporations (3d ed.) §12.229, p. 230.

Respondent Cousineau contends, however, that petitioner did in fact have the equivalent of a judicial hearing. The facts upon which respondent bases such conclusion are that the mayor advised petitioner that the power to fill vacancies in the police department was vested in him by the charter; that he had been so advised by the law department; that action by the board for such purpose was contrary to the best interests of the city and would cause con-

fusion in the administration of its affairs; that he would remove petitioner from office if, notwithstanding such advice, the board held a meeting in order to fill such vacancies; that when the board persisted in taking action to fill the vacancies he handed petitioner the written notice of discharge hereinbefore referred to and advised him that his removal was "for the good of the service by authority of the City Charter"; and that all of the foregoing took place between 11:40 and 11:49 p.m. on May 31, 1963.

Assuming without deciding that petitioner received the equivalent of a specification of charges, he clearly did not receive due notice of a hearing, or a hearing, or an opportunity to present a defense to the proposed action of the mayor. The proceedings at or about midnight on May 31 which resulted in petitioner's removal clearly lack those essential ingredients which in law would entitle them to be deemed judicial in nature. *Garvin* v. *McCarthy, supra.*

For the reasons given we decide that the attempted removal of petitioners Davis and Moffett was illegal.

We now come to the question of entitlement to the office of deputy police chief.

The board was first created by P. L. 1911, chap. 695, which gave it authority "to appoint, remove, and control the chief of police, deputy chief * * * and all other attaches of the police department of said town, and to fix the salaries of such officers and agents of the board," and "to make all necessary rules and regulations for their efficiency, management and direction, not inconsistent with the laws of the state of Rhode Island."

Upon the establishment of Warwick as a city the duties and powers conferred on the board by chap. 695 were continued "in full force and effect * * *." P. L. 1931, chap. 1852, sec. 8, clause 3.

Article 8-6 of the charter provides that the board "shall have and perform all of the powers, duties and functions

of the board of police commissioners and the bureau of fire, *except as otherwise provided in this charter."* (italics ours) That the power to appoint police officers originally granted to the board by chap. 695 and continued in effect by chap. 1852 has been incorporated in art. 8-6 is clear unless there can be found in the charter some provision which takes that power from it.

Respondent Whorf contends that art. 3-3 (1) is such a provision. It vests in the mayor the authority to appoint "all officers and employes of the city *except as otherwise provided by this charter * * *."* (italics ours)

We are, therefore, called upon to construe two sections of a single legislative enactment which are clearly in conflict. Article 8-6 gives the appointing power as to police officers to the board absent some charter provision providing otherwise; art. 3-3 (1) to the mayor excepting only if otherwise provided for by the charter. When a clear inconsistency between two sections of a single legislative enactment exists as here, the problem of which provision controls cannot be solved by an examination of the canons of statutory construction and the application of an appropriate one as the *ratio decidendi* of our conclusion. Rather we must look to the legislative purpose. We recognized this principle of statutory construction in *Davis* v. *Cranston Print Works Co.,* 86 R. I. 196, where, while refusing to resolve a conflict between two portions of a single act by application of the canons of construction, we said at page 199, "* * * that with respect to the provisions in conflict here we ought to give effect to that one which will most effectively carry out the legislative intent and purpose."

It is our opinion that the legislature did not intend to remove the appointive power from the board. The charter gave to the board all the powers its predecessor had prior to the enactment thereof. These included the power to appoint police officers. The grant to it of "all of the pow-

ers, duties and functions of the board of police commissioners" as effectively vested in it the appointive power as if it had been specifically set forth therein. If the legislature had not so intended it would have enumerated in art. 8-6 either the powers originally conferred by chap. 695 omitting therefrom the appointive power or it would have specifically vested such power elsewhere. It did neither.

Respondent Whorf concedes that the power to appoint school employees is in the school committee under art. 9-7 of the charter which provides that "The appointment * * * of all school employees shall be made by the school committee * * * *except as may be provided otherwise by the laws of the state or provisions of this charter."* (italics ours) We see no distinction between art. 8-6 as construed by us and art. 9-7. The legislature indicated a clear intent to vest effective control as to the police department in the board and as to school employees in the school committee. Each department was made subject to the control of an independent board. Control in this instance implies more than the power to regulate as to the manner and form of performance of duty. Control here without the power to appoint and remove is no control.

It is our opinion that the phrase "except as otherwise provided" in art. 8-6 does not take away from the board the power to appoint police officers and that the identical provision in art. 3-3 (1) does limit the power of the mayor so as to deprive him of the right to make such appointments.

We hold that petitioners Davis and Moffett are legally entitled to the offices of members of the board of public safety of the city of Warwick in accordance with the terms of their offices; that the respondents Cousineau and Orme are not so entitled; that petitioner Gleavey is legally entitled to the office of deputy chief of police of the police department of the city of Warwick; that the respondent

Whorf is not so entitled; and that the respondents Cousineau and Orme and the respondent Whorf each be absolutely forejudged and excluded from exercising or using the office of member of the board of public safety of the city of Warwick and the office of deputy chief of police of the police department of the city of Warwick respectively, or any of the authorities or privileges as to each such respective office.

On December 18, 1963 a decree in each case in accordance with this opinion may be presented by the parties for entry by the court.

### ON MOTION FOR REARGUMENT.

#### DECEMBER 17, 1963.

PER CURIAM. After our opinion was filed in the above cases, the respondent Whorf in the case of George M. Gleavey v. Frank Whorf, Equity No. 3103, was granted permission to present a motion for reargument.

Pursuant thereto he has filed such a motion setting out therein the particular reasons on which he bases his contention that justice requires a reargument.

We have carefully considered such reasons and are of the opinion that they suggest nothing which in the circumstances warrants a reargument.

Motion denied.

*Joseph Mainelli,* for petitioners.

*James R. Morriss,* City Solicitor, *Howard R. Haronian,* Assistant City Solicitor, for City of Warwick, for respondents.