Douglas STEWART

v.

Sue P. SHEPPARD, in her capacity as Town Administrator of the Town of Lincoln, Rhode Island.

No. 2005–14–Appeal.

Supreme Court of Rhode Island.

Nov. 15, 2005.

Monica Horan, Pawtucket, for Plaintiff.

George M. Prescott, Lincoln, for Defendant.

Present: WILLIAMS, C.J., GOLDBERG, FLAHERTY, SUTTELL, and ROBINSON, JJ.

## OPINION

Justice GOLDBERG, for the Court.

This case came before the Court on October 5, 2005, pursuant to an order directing the parties to appear and show cause why the issues raised in this appeal should not summarily be decided. After hearing the arguments of counsel and reviewing the memoranda of the parties, we are satisfied that cause has not been shown. Therefore, we proceed to decide the case without further briefing and argument.

## Introduction

The plaintiff, Douglas Stewart (plaintiff or Stewart), is before the Court on appeal from the grant of partial summary judgment in favor of the defendant, Sue P. Sheppard, town administrator for the Town of Lincoln (defendant or Sheppard). This case presents two questions for our consideration; first, whether the position of director of finance (finance director) in the Town of Lincoln is coterminous with the term of office of the town administrator? Second, if not, what are the prescribed procedures that must be followed to remove the finance director in accordance with the Lincoln Town Charter (charter)? The facts are largely undisputed. In January 2003, the newly elected town administrator fired both the chief of police and the finance director, without specifying any cause. These firings precipitated two separate lawsuits alleging wrongful termination of employment.

The first lawsuit, *Kells v. Town of Lincoln*, 874 A.2d 204 (R.I.2005), brought by the chief of police, Robert T. Kells (Kells) and decided by this Court on June 3, 2005, affirmed the grant of summary judgment in favor of the chief of police that permanently enjoined Sheppard from removing Kells from office absent cause and compliance with the removal provisions of the charter.[1] In concluding that Sheppard

---

1. In *Kells v. Town of Lincoln*, 874 A.2d 204 (R.I.2005), the plaintiff, chief of police, sought both injunctive and declaratory relief in an attempt to prevent his ouster from municipal employment. The plaintiff argued that be-cause he was an officer, appointed for an indefinite term, he could be removed only in accordance with the strict mandates of Article XIV, section 14–10 of the Lincoln Town Charter. The hearing justice agreed with the

had no authority to unilaterally fire the chief of police, this Court navigated through several provisions of the charter. This appeal concerns the firing of the finance director. Although this case and *Kells* arise from similar facts and concern the removal of a municipal employee without cause, this case raises new arguments.

### Statement of the Facts and Travel of the Case

On July 31, 2001, Stewart was hired by the former Lincoln Town Administrator, Jonathan F. Oster (Oster), as the town's finance director. At the general election in November 2002, the voters of the Town of Lincoln elected defendant, the former town clerk, to the position of town administrator. Besides electing Sheppard and members of the town council, the voters approved several amendments to the charter. Certain of those amendments affect the outcome in this case. The defendant was sworn in as town administrator on January 7, 2003, and the changing of the guard in town hall was swift and far-reaching. On January 8, 2003, her first day in office, defendant fired the chief of police, Robert T. Kells, without specifying any cause. *See Kells,* 874 A.2d at 208. Shortly thereafter, on January 24, 2003, plaintiff was relieved of his duties as finance director.

The plaintiff's firing was not as abrupt as that of the chief of police—defendant initially met with plaintiff and informed him that she intended to advertise the position of finance director and accept applications. At this meeting plaintiff was not relieved of his duties, and the record discloses that he remained in office on the payroll. The plaintiff submitted an application and continued to serve as finance director for a period of weeks, without interruption or interference.

On January 24, 2003, defendant again met with plaintiff and notified him that he was fired, that the discharge was effective immediately, and that his replacement already had been selected. At no point was plaintiff afforded the opportunity to submit his resignation, nor did defendant disclose why he was removed from office.

On March 6, 2003, plaintiff filed a verified complaint seeking injunctive and equitable relief. Specifically, plaintiff requested that defendant be enjoined and restrained from preventing him from performing his duties and that he be reinstated to this position forthwith. The complaint also included a prayer for compensatory and punitive damages for the alleged wrongful firing.

The defendant filed an answer and counterclaim, seeking a declaratory judgment that plaintiff was not legally entitled to serve as finance director because he was not a qualified elector of the town.

At the preliminary injunction hearing, both parties stipulated to an agreed statement of facts and submitted memoranda to support their respective positions. On February 2, 2004, the hearing justice denied injunctive relief, finding that plaintiff failed to demonstrate that he would suffer irreparable harm if not immediately re-

---

plaintiff and permanently restrained and enjoined the defendants from removing Kells from office unless he was fired for cause in accordance with appropriate procedures. The defendants appealed, and this Court determined that, although no longer considered an officer of the town for purposes of section 14–10, the plaintiff was entitled to the procedural safeguards set forth in Article VI, section 6–6(1) and section 14–11. Similar to section 14–10, these provisions specify removal for cause and establish a procedure for firing appointive officers or employees. Because the police chief's firing was not procedurally sound, this Court affirmed the hearing justice's ruling.

turned to office. However, plaintiff's claims for compensatory and punitive damages remained pending.

The defendant moved for summary judgment on the remaining issues. To support her motion, defendant relied on Article VII of the charter, entitled "DEPARTMENT OF FINANCE." The defendant argued that because section 7–1 [2] provides that there shall be a director of finance, "who shall be the town administrator or a person appointed by him[,]" the office immediately was vacated upon the election of a new town administrator. According to defendant, she succeeded to the position of finance director when she took office on January 7, 2003, and therefore plaintiff's firing on January 24, 2003, could not have been wrongful because the position had been vacated by operation of law.

2. Because several Lincoln Town Charter provisions will be discussed throughout this opinion, we provide them here for reference purposes.

**Article VI, section 6–6(1), of the Lincoln Town Charter** provides:

The town administrator shall: "[A]ppoint and, when necessary for the good of the services, remove all officers and employees of the town except as otherwise provided by this Charter, and except as he may authorize the head of a department or office to appoint and remove subordinates in such department or office[.]"

**Article VII, section 7–1** provides:

"There shall be a department of finance, the head of which shall be the director of finance, who shall be the town administrator or a person appointed by him. Further organization of this department shall be as stated in this Charter and by ordinances enacted by the town council, to the end that the essential processes in the finances of the town, namely, control and accounts, purchasing, assessment of property, collection of taxes and other revenues and payments may be properly administered."

**Article XIV, section 14–10** provides:

"Officers of the town appointed for an indefinite term may be removed by the office or agency which appointed them. If any such officer appointed for an indefinite term refuses to resign when asked for his resignation by the proper authority, the town administrator if his office made the original appointment or nomination, or any member of the town council if the town council made the original appointment, may prefer charges against said officer before the town council, requesting his removal. The council after giving written notice of said request and of the time and place of the hearing delivered to said officer or mailed by certified mail to said officer at his last known address, together with a copy of said charges at least ten (10) days prior to the date of the hearing, may after hearing on said charges remove said officer by affirmative vote of a majority of the entire town council. Said hearing shall be public if said officer so requests by a written demand filed with the town council two (2) days prior to the date of the hearing."

**Article XIV, section 14–11** provides in pertinent part:

"The jurisdiction of the town council shall extend to all cases of appeals from dismissals, suspensions, demotions or transfer[s] or lay-offs of appointive officers and employees of the town, whether in the classified service or not, except those in the school department working in an administrative, supervisory or teaching capacity, and except those provided for otherwise in this Charter in section 14–10. * * * In the event that any person is dismissed, suspended, demoted or transferred as provided herein, he may appeal in writing to the town council within ten (10) days from such dismissal, suspension, demotion, transfer or lay-off. Unless such appeal has been withdrawn, the council within ten (10) days from the filing of such appeal, shall give the dismissed, suspended, demoted or transferred person, or person laid-off and the department head, board or other agency involved, the opportunity to be heard at a hearing before said council. After such hearing, which shall be public at the option of the person making the appeal, the action of the council shall be final and binding, and shall not be subject to appeal or further revision except as may be otherwise specifically provided by law. The review afforded herein shall be deemed to be alternative to and/or in addition to that granted by general and special state laws to certain classes of town employees."

The plaintiff also sought summary judgment, arguing that defendant failed to comply with the dismissal provisions of the charter as set forth in Article XIV, section 14–10. Specifically, plaintiff argued that he was an officer "appointed for an indefinite term" and that he could be removed only by voluntarily submitting his resignation if requested, or, if defendant preferred charges against him to the town council, requesting his removal from office. Because he was denied these procedural protections, plaintiff argued that his termination was wrongful.

These cross-motions for partial summary judgment came before a magistrate judge on July 20, 2004. In arguing against defendant's motion for summary judgment, plaintiff contended that Article XVII, section 17–3(3) had been amended by the voters at the November 2002 election and, as a result, the finance director held one of only two appointed positions that were classified as officers of the town. The plaintiff alleged that as an officer of the town, he was entitled to the protections afforded by section 14–10, which mandated that he could be removed only for cause. The plaintiff essentially asserted the same arguments in support of his motion for summary judgment that had been argued in opposition to defendant's motion.

The hearing justice rejected plaintiff's contentions and granted summary judgment in favor of the defendant, finding that plaintiff no longer was the finance director—because as of January 7, 2003, the day Sheppard assumed office, the office was vacant. The hearing justice reasoned that the charter "explicitly states that the Lincoln Finance Director shall be the Town Administrator or a person appointed by him[.]" Accordingly, the hearing justice found that, upon being sworn in as the new town administrator, defendant assumed the position of finance director by operation of law. The hearing justice granted summary judgment in favor of defendant and denied plaintiff's motion.[3] The plaintiff timely appealed.

## Standard of Review

 We consistently have declared that "[s]ummary judgment is an extreme remedy and should be granted only when 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Plunkett v. State*, 869 A.2d 1185, 1187 (R.I. 2005). "In passing on a grant of summary judgment by a justice of the Superior Court, this Court conducts a *de novo* review." *United Lending Corp. v. City of Providence*, 827 A.2d 626, 631 (R.I.2003). In this case, both parties moved for summary judgment on plaintiff's entitlement to remain as finance director and jointly filed an agreed statement of facts. Consequently, with respect to this issue, the parties have conceded that there are no genuine issues of material fact and this Court's *de novo* review will focus on whether defendant was entitled to judgment as a matter of law.[4]

---

3. On appeal, defendant argues that plaintiff is precluded from arguing anything that was offered to support his motion for summary judgment because that motion was denied by the hearing justice and is not properly before the Court. We reject this contention. The record discloses that both parties sought summary judgment and the legal arguments made by plaintiff in favor of summary judgment involved the same legal issues as were addressed in this argument.

4. There was a third motion for summary judgment argued before the hearing justice concerning defendant's counterclaim to recover damages earned by plaintiff from July 31, 2001, to December 31, 2002, on the

## Analysis

On appeal, plaintiff takes exception to the hearing justice's finding that the position of finance director is coterminous with that of the town administrator. Specifically, Stewart argues that the hearing justice misapplied Article VII, section 7-1 of the charter to the facts of this case. In addressing these contentions, we do not write on a clean slate.

■■■ "[W]hen construing a municipal charter, the usual rules of statutory construction apply." *Providence Teachers Union Local No. 958 v. Napolitano,* 554 A.2d 641, 643 (R.I.1989) (citing *Coventry School Committee v. Richtarik,* 122 R.I. 707, 713, 411 A.2d 912, 915 (1980)). "It is the accepted rule that the provisions of city charters should be construed so as to give, so far as possible, reasonable meaning and effect to all parts of the section in question." *Carter v. City of Pawtucket,* 115 R.I. 134, 138, 341 A.2d 53, 56 (1975). However, "when the language of the statute is clear and unambiguous, the court must interpret it literally, giving the words of the statute their plain and ordinary meanings." *Labor Ready Northeast, Inc. v. McConaghy,* 849 A.2d 340, 345 (R.I. 2004).

Section 7-1 of the charter provides in relevant part that:

"There shall be a department of finance, the head of which shall be the director of finance, who shall be the town administrator or a person appointed by him."

■■ We note that this section, entitled "Organization," does not specifically address the issue of *removal* and contains very general guidelines about creating and structuring the department of finance, including the position of director. Nothing in Article VII provides for removing the finance director or any other employee, nor are we satisfied that simply because section 7-1 permits the town administrator to serve as the finance director, the position is coterminous with that of the town administrator. We reach this conclusion by a careful examination of the charter as amended, and in light of our holding in *Kells.*

■■ The authority of the town administrator to fire an employee is expressly limited by Article VI, section 6-6(1) of the charter, which provides that the administrator shall, "when necessary for the good of the services, remove all officers and employees of the town except as otherwise provided." In accordance with our established precedent, the phrase "for the good of the services" is an implicit limitation on the administrator's power to dismiss and requires a showing of cause. *Kells,* 874 A.2d at 212 (citing *Aniello v. Marcello,* 91 R.I. 198, 207, 162 A.2d 270, 274 (1960)).[5] As we noted in *Kells,* this language entitles the employee "to a specification of charges, due notice of a hearing, and an opportunity to be heard and offer evidence in defense or explanation." *Id.* (quoting *Davis v. Cousineau,* 97 R.I. 85, 90, 196 A.2d 153, 156 (1963)).

Accordingly, we are satisfied that section 7-1 of the charter is not a removal

ground that plaintiff was not a qualified elector of the town and therefore served in violation of the charter's residency requirement. The motion for summary judgment was denied and this issue is not before the Court.

5. We need not address the nature of the finance director as a political appointee or as a policymaker in the town administration, who arguably would be terminated without cause, because this issue was not preserved for appeal. *See Montaquila v. St. Cyr,* 433 A.2d 206 (R.I.1981).

provision and that defendant's argument that the finance director's tenure is coterminous with the town administrator is without merit. Section 7–1 simply provides that the administrator may decide to serve as the finance director as well as the town administrator, but is not required to do so. In this instance, Sheppard did not elect to do so. The fact that Sheppard may wear two hats does not mean that she may unilaterally clean out the closet.

Because the drafters have included an article pertaining to personnel matters, specifically addressing the removal of both town officers and employees, we are not satisfied that it was the drafters' intention to have section 7–1 govern the removal of the finance director when there exists explicit statutory guidance to the contrary. Such a conclusion is unreasonable and not supported by the record.

Again, as we held in *Kells*, 874 A.2d at 213, Article XIV sets forth the removal procedures for officers and employees of the town and the level of protection afforded an individual varies, depending on whether he or she is considered an "officer." Whether an employee is an officer of the town as set forth in Article XVII, section 17–3(3), was radically altered by the voters at the 2002 election, and only two appointed officials now fall within that category—the town clerk and the finance director. Before the amendment, section 17–3(3) provided:

> "The term of office of all officers, members of boards, commissions and committees of the town appointed with the approval of or appointed or elected by the town council shall be concurrent with the term of the town council unless otherwise provided in this Charter."

This language was repealed in its entirety, and section 17–3(3) as amended, provides:

> "The term 'officer or officers' as used in this Charter shall refer only to the town administrator, members of the town council, the town clerk and the finance director. This section shall control the use of the term 'officer(s)' as to any other usage in this Charter that is inconsistent herewith."

The clear import of this amendment was to delete the coterminous language governing appointed positions and specifically limit those officials who are officers "as to any other usage" in the charter, including section 14–10. In *Kells*, the town argued (1) that because the chief of police did not fall within section 17–3(3) as amended, he was no longer an officer of the town and (2) that the term "officer" related "*only* to the town administrator, members of the town council, the town clerk, and the finance director." *Kells*, 874 A.2d at 213. This Court agreed with the town's contentions and held that the phrase "officers appointed for an indefinite term" as set forth in section 14–10 excluded all employees with the exception of those employees who fall "within the short list of positions enumerated in section 17–3(3)." *Kells*, 874 A.2d at 213. Thus, in light of the amendment to section 17–3(3) and our holding in *Kells*, we are satisfied that the finance director is an officer of the town entitled to the protections of section 14–10 of the charter.

However, defendant seeks to distance herself from the contentions she raised in *Kells*. Although not challenging plaintiff's status as an "officer of the town," defendant nonetheless argues that the finance director is not appointed "for an indefinite term" and therefore falls outside the purview of section 14–10. The defendant points to charter provisions establishing the positions of town clerk, chief of police, public health director, and public welfare director, which specifically provide that

these officers serve for an indefinite term, in contrast to the position of finance director. But, as we noted in *Kells*, after the 2002 amendment to section 17–3(3), except for the town clerk, none of these positions is on the short list of officers entitled to the protections of section 14–10 because they no longer are officers. We concluded that, although Kells served for an indefinite term, he no longer was considered an officer "as to any other usage in [the] Charter that is inconsistent herewith." Section 17–3(3); *see Kells*, 874 A.2d at 213.

In light of our previous holding in *Kells*, there is a finite group of town officials who qualify as officers of the town: members of the town council, the town administrator, the town clerk, and the finance director. *Kells*, 874 A.2d at 213; section 17–3(3). Out of this group, only the town clerk is explicitly appointed for an indefinite term.[6] Were we to accept defendant's interpretation, the town clerk would be the only "officer" to whom section 14–10 would apply. Such an awkward result defies reason. If the drafters wanted section 14–10 to apply to only the town clerk, this feat could have been accomplished in one sentence, rather than by an interpretive game of connect the dots. "Instead, this Court looks to mechanisms within the [c]harter that clearly create and protect the rights" of town employees. *Kells*, 874 A.2d at 212.

By specific charter amendment, the position of finance director was classified as an officer and that amendment controls the use of the term "officer" throughout the charter, including section 14–10. As previously noted, the 2002 amendment replaced the charter's coterminous provisions and in its stead listed those positions that would thereafter be considered "officers" in the town. One of the effects of this amendment, whether intended or otherwise, was to delineate the specific town employees entitled to the removal protections of section 14–10. *Kells*, 874 A.2d at 212. The finance director is such an employee.

Therefore, because the defendant neither asked for the plaintiff's resignation nor preferred charges against him before the town council, we conclude that the plaintiff was not fired in accordance with section 14–10 of the charter and that his purported firing was invalid.

### Conclusion

For the aforementioned reasons, the judgment appealed from is vacated. The papers of this case are remanded to the Superior Court for further proceedings consistent with this opinion, including the plaintiff's right to renew his motion for summary judgment.

---

**6.** Members of the town council and the town administrator serve two-year terms. *See* section 5–1 and section 6–1 of the charter.