DECISION
This action for declaratory and injunctive relief concerns the propriety of a decision made by plaintiff William R. Macera, shortly after he assumed elective office as Mayor of the Town of Johnston (the "Town") in January 1999, to terminate the defendant, Fred L. Iafrate, without cause, from his position as Highway Director in the Town. Plaintiff Macera claims that defendant Iafrate was appointed by former Mayor Louis A. Perrotta as Director of the Department of Public Works ("DPW"), or its functional equivalent, such that he served at the pleasure of the Mayor and could be terminated without cause. Plaintiff Macera argues, in the alternative, that even if defendant Iafrate held the position of Highway Director within the DPW, he was a department head with no right to continued employment in Mayor Macera's administration. Defendant Iafrate counters that, as Highway Director, he does not serve at the pleasure of the Mayor and can be terminated only for cause in accordance with the Town Charter and the applicable collective bargaining agreement.
This Court has jurisdiction of this matter pursuant to the Rhode Island Uniform Declaratory Judgments Act, R.I. Gen. Laws9-1-30 et. seq. and the general equity jurisdiction of this Court.
 FACTUAL BACKGROUND AND PROCEDURAL HISTORY
Former Mayor Louis A. Perrotta, predecessor to plaintiff Mayor William R. Macera, took office in 1995, succeeding Mayor aRusso. Upon assuming office, Mayor Perrotta requested the resignations of certain department heads that had been appointed by the prior administration. He received ten or twelve resignations and proceeded to appoint "his own people".
With respect to the Department of Public Works (the "DPW"), Mayor Perrotta assumed for himself the position of Director of the DPW, as is allowed by the Charter of the Town of Johnston and as had been done by Mayor aRusso before him. Art. X, section 10-1. Under his administration, the DPW was loosely subdivided into offices, divisions or departments to handle its diverse functions. He appointed or re-appointed persons to serve as heads of each of those offices, divisions or departments.
Specifically, he appointed a Highway Director, Utilities Director, Recreation Director, Building Official, Building Inspector, Director of Building Operations, Plumbing Inspector, and Electrical Inspector. See Town's Exhibit O. He also hired a Town Engineer. These offices, divisions and departments collectively oversaw the functions and services of the Town relating to streets, highways, sidewalks, bridges, water courses, street lighting, storm sewers, the water supply system, garbage collection and disposal, the construction, maintenance, repair and operation of all public buildings and properties belonging to or used by the town, building, plumbing and electrical inspections, issuance of building, electrical and plumbing permits, and the regulation of weights and measures. Art. X, section 10-2.
Mayor Perrotta oversaw the heads of these offices, divisions and departments. Those individuals handled the day-to-day functions of their offices and directed any problems to the Mayor's office. According to Mayor Perrotta, the Town Council ratified all of his appointments.
In particular, with respect to the Highway Department, Mayor Perrotta appointed defendant Fred L. Iafrate (who had been the Chairman of the Democratic Town Committee that endorsed Mayor Perrotta) to serve as Highway Director within the DPW. Defendant Iafrate replaced a former Highway Director who had decided to retire from that union position. Upon accepting his appointment, defendant Iafrate joined the union, as the applicable collective bargaining agreement (the "Agreement") made the position of Highway Director a union position. See Agreement, section 10.1. The Town thereafter routinely deducted union dues from defendant Iafrate's paycheck and forwarded those monies to the union.
The Agreement provided that the positions of Executive Secretary, Recreation Director and Highway Director shall be appointed at the discretion of the Mayor and further protected those persons from termination without just cause. See Agreement, sections 10.12 and 26.1. In 1996, the provision of the Agreement placing those employees in the bargaining unit was amended to require those positions to become non-union when they became vacant. Mayor Perrotta testified that the 1996 provision of the Agreement to let the union positions lapse was a compromise between his request to remove those positions from the union and the union's request to protect them without limitation. The Mayor claimed he assented to this compromise because long-time employees of the Town were deserving of continued protection until a vacancy occurred. While defendant Iafrate did not fit into that class of an existing Highway Director in the union subject to continued protection, Mayor Perrotta nonetheless agreed to extend union protection to defendant Iafrate because his position had been the subject of long-standing union protection.
In his position as Highway Director, defendant Iafrate oversaw the daily functions of the Highway Department, including the maintenance of streets, highways and sidewalks. He supervised employees within the Highway Department and had the power to hire and fire employees, after consultation with the Mayor or his Chief of Staff. The Mayor also delegated to defendant Iafrate the responsibility for overseeing the Fleet Maintenance Department.
The Utilities Director oversaw bridges, water courses, street lighting, storm sewers and garbage collection. The Utilities Director appointed by Mayor aRusso did not submit his resignation to Mayor Perrotta and remained in that position, as an autonomous head of that office, for a period of time during the Perrotta administration. Mayor Perrotta subsequently appointed another person to serve as Utilities Director and placed that person under the supervision of defendant Iafrate as Highway Director.
The Recreation Director oversaw, at least in part, the construction, maintenance, repair and operation of public buildings and properties belonging to or used by the Town. The Building Inspector oversaw building regulation and inspection, minimum housing regulation, and plumbing and electrical inspections. The balance of the duties of the DPW, other than those assumed by the Town Engineer, appear to have been largely the province of the Highway Department.
In November of 1998, the citizens of the Town of Johnston elected a new Mayor — plaintiff William R. Macera. During the transition between the old and new administrations, Mayor Perrotta's Chief of Staff gave Mayor-elect Macera a list of "department heads" previously appointed by Mayor Perrotta. See Town's Exhibit O. That list erroneously identified defendant Iafrate as the Public Works Director. On December 18, 1998, John M. Verdeechia, who acted as legal counsel to Mayor-elect Macera during the transition, wrote a letter to defendant Iafrate, on the erroneous assumption that Iafrate served as Public Works Director, to inform him that, as Public Works Director, he served at the pleasure of the Mayor, that his employment would cease at the end of Mayor Perrotta's term unless he were re-appointed by Mayor Macera and that he would not be considered for reappointment unless he first tendered his resignation.
Mayor-elect Macera had similar discussions with the Recreation Director who had been appointed by Mayor Perrotta. He told the Recreation Director that he would be fired if he did not resign from the union. The Recreation Director resigned from the union, as requested, and was reappointed.
In a letter to Mayor-elect Macera dated December 21, 1998, defendant Iafrate refused to resign. He stated that he was aware that the Mayor had the authority to appoint new personnel as department heads (a view he no longer holds after considering the language of the Charter), but indicated that he could not resign because the position of Highway Director is a union position. He asked to continue as Highway Director or Fleet Maintenance Director. Defendant Iafrate subsequently submitted his suggestions to Mayor-elect Macera for improving the DPW, including the recommendation that a new DPW facility be built to house the departments of highway, utilities, fleet maintenance, buildings and grounds and water and sewer under one roof.
On January 4, 1999, John Verdecchia, in his capacity as Town Solicitor Designee, responded to the letter defendant Iafrate had sent to Mayor-elect Macera on December 21, 1998. He took the position that the Town Charter granted the Mayor the sole power to appoint department heads, including Highway Director, and that such power could not be abrogated by a collective bargaining agreement. He advised defendant Iafrate that his employment as Highway Director for the Town would cease on January 11, 1999, upon Mayor Macera assuming elective office.
On January 11, 1999, defendant Iafrate appealed his termination to the Johnston Town Council, sitting as the Board of Personnel Review, and also filed a union grievance to protest the termination. The Town refused to participate in the grievance procedure, arguing that defendant Iafrate served at the pleasure of the Mayor in a management position and thus could not be afforded the protections of a collective bargaining agreement as a matter of law. On January 15, 1999, the union filed an unfair labor practice charge against the Town with the State Labor Relations Board, claiming that the Town, through the actions of Mayor Macera, violated the State Labor Relations Act by terminating defendant Iafrate's employment (which the union erroneously stated in the charge was the position of Public Works Director) without first notifying or discussing the matter with the union.
The Town Council, sitting as the Board of Personnel Review, convened a series of hearings beginning on February 8, 1999 with respect to defendant Iafrate's appeal. Mayor Macera argued at the hearings, without success, that the Town Council lacked jurisdiction to hear the appeal because defendant Iafrate had not exhausted the grievance process and because, as Public Works Director, he was subject to termination without cause and without any right of appeal to the Town Council. The Town Council ultimately determined, by decision dated February 20, 1999, that defendant Iafrate served as Highway Director, and not Public Works Director. The Mayor did not argue to the Council, or prove to its satisfaction, that a person in the position of Highway Director serves at the pleasure of the Mayor under the Charter and can be terminated without cause. The Council found further that, in terminating defendant Iafrate, the Mayor violated the applicable collective bargaining agreement. The Council ordered defendant Iafrate reinstated with back pay to January 11, 1999, with all rights of seniority, health benefits and other incidents of employment.
On February 24, 1999, plaintiff Macera filed the instant action for declaratory and injunctive relief in this Court, naming as defendants the Town Council, sitting as the Board of Personnel Review, and Fred L. Iafrate. He alleged that defendant Iafrate formerly held the position of Highway Director in the Town of Johnston. Plaintiff Macera asked this Court to declare that the position of Highway Director is a position that is appointed and serves at the pleasure of the Mayor and that the provisions of the collective bargaining agreement which include the position of Highway Director as part of the collective bargaining unit be declared null and void.
Mayor Macera further claimed that he had appointed Anthony Vendetelli to serve as Highway Director on January 11, 1999 and that the Town Council decision had caused the Town to have two people serving in the same position. The plaintiff sought a temporary restraining order and preliminary and permanent injunction to enjoin enforcement of the Town Council decision reinstating defendant Iafrate to the position of Highway Director. In support of his request for temporary relief and the argument that the Town should not have two people serving in the same position, plaintiff Macera filed sworn affidavits of Mayor Macera and Anthony Venditelli stating that Mr. Venditelli had been appointed by the Mayor on January 11, 1999 to serve as Highway Director.
On February 26, 1999, after conference, the parties entered into a consent order granting plaintiff Macera's request for a temporary restraining order, upon payment of certain monies to defendant Iafrate, pending expedited-briefing and decision. The order allowed the union to intervene.
Defendant Iafrate has filed an answer to plaintiffs complaint, admitting plaintiffs allegation that he held the position of Highway Director. He also asserted a counterclaim by which he seeks issuance of a court order or writ of mandamus to require the Town to reinstate him with back pay and all other employment benefits due, together with attorneys' fees, for a claimed violation of his federal right to due process and his right under the Charter and the collective bargaining agreement not to be dismissed without cause.
On March 31, 1999, plaintiff Macera filed a claim of appeal in this action by which he sought not only declaratory and injunctive relief but to have this Court review, on appeal, the decision of the Town Council sitting as the Board of Personnel Review that was the subject of his original complaint. That claim of appeal prompted a motion for summary judgment filed by defendant Iafrate by which he challenged this Court's jurisdiction to hear the appeal and, by extension, to hear plaintiffs request for declaratory and injunctive relief Defendant Macera argued that, under Eastern Scrap Services, Inc.v. Harty, 341 A.2d 718 (R.I. 1975), review of a Town Council decision had to proceed by way of a petition for certiorari filed in the Supreme Court.
At the hearing on that motion on April 5, 1999, plaintiff Macera agreed to proceed by way of filing a petition for writ of certiorari. He then applied to the Supreme Court for a stay pending appeal which was denied without prejudice to his renewing the request if the status quo were to change before the Supreme Court took up the petition for certiorari on April 22, 1999.
This Court, on April 7, 1999, denied defendant Iafrate's motion to dissolve the temporary restraining order, to maintain the status quo pending a decision on the merits. The plaintiff filed the application for a writ of certiorari, and the Supreme Court, in an order dated April 22, 1999, deferred consideration of the certiorari petition pending this Court's hearing and decision on plaintiffs request for declaratory and injunctive relief The order indicated that the hearing of plaintiffs complaint "shall of course include such fact finding as the trial justice may deem necessary to decide the issues raised by the parties."
In light of the Supreme Court's order, this Court thereafter requested an evidentiary hearing with respect to plaintiff Macera's complaint for declaratory and injunctive relief. At that hearing, on May 25, 1999, the testimony of several witnesses was presented and the record of the Town Council proceeding was submitted in evidence by agreement of the parties. It was at this hearing that the Court first learned, through the cross-examination of Mayor Macera, that the affidavits submitted by plaintiff Macera and Anthony Venditelli were wrong; the Mayor testified that he had appointed Mr. Venditelli to the position of Public Works Director, not to the position of Highway Director, on January 11, 1999. The Mayor used monies appropriated for the position of Highway Director, in part, to pay Mr. Venditelli. The Town Council denied the Mayor's request to pay Mr. Venditelli a salary in excess of that previously paid to defendant Iafrate.
At the hearing, the parties further agreed that the case could be consolidated for decision on plaintiff's request for preliminary and permanent injunctive relief Portions of defendant Iafrate's counterclaim were severed, by agreement of the parties, for consideration following this Court's decision with respect to plaintiffs complaint. After consideration of the testimony and evidence submitted, together with the parties' briefs filed in this Court and in the Supreme Court, this matter is now ripe for decision.
 THE CHARTER
Plaintiff Macera contends that defendant Iafrate held the position of Director of Public Works such that he served at the pleasure of the Mayor and could be terminated without cause and without a right of appeal to the Town Council sitting as the Board of Personnel Review. He argues in the alternative that, even if defendant Iafrate served as Highway Director, he acted as either the functional equivalent of the Public Works Director or a department director, serving at the pleasure of the Mayor and subject to termination without cause and without right of appeal to the Town Council. Plaintiff further contends that defendant Iafrate, as a managerial and supervisory employee serving at the pleasure of the Mayor, cannot be granted protection from termination without cause by a collective bargaining agreement.
Defendant Iafrate counters that he was appointed to the position of Highway Director such that he was not the Director of Public Works or its functional equivalent. He argues that, as the Highway Director, he could not be terminated without cause under the Town Charter and the applicable collective bargaining agreement.
This Court first will address the question of whether, under the Johnston Town Charter, defendant Iafrate served at the pleasure of the Mayor such that he could be terminated without cause. To answer that question, this Court must examine the provisions of the Charter that pertain to the Mayor's powers of appointment and removal of certain officers and employees and those provisions that concern the Department of Public Works.
The Charter of the Town of Johnston creates the elected office of Mayor and several offices and departments of town government. See Arts. IV-XVIII. The Charter grants the Mayor the power to appoint the heads of each of those offices and departments and generally dictates that they serve at the pleasure of the Mayor. See, e.g., Art. V, section 5-1 (Town Clerk and Deputy Clerk serve at the pleasure of the Mayor); Art. IX, section 9-1 (Director of Finance shall be the Mayor or a person appointed by the Mayor to serve at the pleasure of the Mayor); Art. X, section 10-1 (Director of Public Works shall be the Mayor or a person appointed by the Mayor to serve at the pleasure of the Mayor); Art. XIII, section 13-1 (Director of Public Health serves at the pleasure of the Mayor); Art. XIV, section 14-1 (Director of Public Welfare serves at the pleasure of the Mayor); but see Art. XI, $ 11-1 (Chief of Police appointed by the Mayor but subject to removal by the Mayor only for cause).
The Charter also gives the Mayor responsibility for the administration of all departments, offices and agencies, except as provided otherwise by the Charter. Art. IV, section 4-6. To fulfill that responsibility, the Charter states that "he shall [a]ppoint and remove for cause any officer or employee of the town except as provided otherwise by the Charter, and except that he may authorize the head of a department or office to remove subordinates in such departments or offices." Art. IV, section 4-6(1). The heads of departments and agencies appointed by the Mayor are in the unclassified service. Art. XVI, section 16-4. The Charter empowers each elected officer, department head, board and agency, unless otherwise provided by the Charter, to "appoint, dismiss, suspend, demote, transfer or lay off his or her deputies, clerks, assistants and subordinates serving under his or their supervision or control, subject to appeal to the Town Council acting as the board of personnel review." Art. XVI, section 16-11. The removal of those employees by a department head must be for cause. See Art. IV, section 4-6(1). The Town Council, acting as the board of personnel review, extends to appeals from dismissals of appointive officers and employees of the Town, whether in the classified or unclassified service, and except as provided otherwise in the Charter, with notice and an opportunity to be heard given to the employee and the department head, board or other agency involved. Art. XVI, section 16-10.
With regard to the Department of Public Works, at issue here, the Charter provides;
 "There shall be a department of public works, the head of which shall be the director of public works, who shall be the mayor, or a person appointed by him serve at the pleasure of the mayor, with such compensation as is fixed by town ordinance. Further organization of the department into divisions or offices shall be by the town council by ordinance, on the recommendation of the mayor; provided, that the offices of town engineer, tree warden, building inspector, plumbing and electrical inspectors, fence viewer and all offices of a similar type shall be put into the department of public works."
Art. X, section 10-1. The Charter mandates that
 "the department of public works shall be responsible for the functions and services of the town relating to streets, highways, sidewalks, bridges, water courses, street lighting, storm sewers, the water supply system, the collection and disposal of garbage and other refuse, the construction, maintenance, repair and operation of all public buildings and properties belonging to or used by the town, building, electrical and plumbing inspections, issuance of building, electrical and plumbing permits, the regulation of weights and measures, and such other functions as may be prescribed by ordinance whether they be performed by this department or by others under contract."
Art. X, section 10-2.
The Johnston Town Code contains further provisions regarding the DPW. The ordinance creates the office of director of public works and mandates that such office is filled by a registered civil engineer. Section 2-49 (1-3-61). It further divides the department of public works into the following agencies:
(a) the agency of public roads and bridges; (b) the agency of public buildings and grounds; (c) the agency of building regulation and inspection; (d) the agency of minimum housing regulation; (e) the agency of plumbing regulation and inspection; and (f) the agency of electrical inspection and regulation.
Section 2-49A (3-8-71). With regard to those agencies, the ordinance further provides that "the director of public works, with the approval of the mayor, shall appoint an individual to serve as head of each agency, each person to be compensated at a salary to be set by the town council, with the approval of the town council as provided by ordinance." Id.
A fair reading of these Charter provisions suggests that officers and employees of the Town who are appointed by the Mayor fall into two categories: those who the Charter expressly dictates serve at the pleasure of the Mayor and those who are not the subject of such an express Charter provision and thus can be removed only for cause. See Art. IV, section 4-6(1); see generally Arts. V-XVIII. While the Mayor has an absolute right of appointment, therefore, he does not have the absolute right to terminate all of his appointees.
A mayoral appointee in the former category, being a person who serves at the Mayor's pleasure, can be terminated without cause and has no right of appeal to the Town Council sitting as the Board of Personnel Review. An appointee in the latter category, however, whether a classified or an unclassified employee, may be terminated only for cause, subject to such a right of appeal. This scheme, adopted by the people in the Charter, is designed to allow a Mayor to appoint certain-defined "department heads" as his cabinet upon assuming office and to terminate them without cause if they do not serve his purposes, thereby assuring confidentiality and loyalty, while protecting other mayoral appointees serving outside of those defined positions from the winds of political change to ensure stability, continuity and competency in the functioning of government.
In the Department of Public Works, the Mayor can appoint a Director of the DPW or assume that position himself. If he chooses to appoint a director, that individual serves at the pleasure of the Mayor. The Director thus can be terminated without cause and has no right of appeal to the Town Council sitting as the Board of Personnel Review. If he chooses not to appoint a director, however, and to assume that position himself, he relinquishes a measure of control over those appointees in the DPW beneath him. All mayoral appointees in the DPW other than the Director, including those persons who are appointed by the Mayor to oversee the various departments, divisions and agencies within the DPW and are subject to Town Council approval, do not serve at the Mayor's pleasure and can be terminated only for cause, subject to a right of appeal to the Town Council sitting as the Board of Personnel Review. A decision by a Mayor to make himself the director and to allow, in essence, appointees beneath the director to serve as top advisors to the Mayor and department directors within the DPW does not bind a successive administration; it is an absolute prerogative of the next Mayor under the Charter, if unwilling to relinquish a degree of management control of the DPW to such employees, to appoint a director rather than assume the powers of the director himself.
Given this construct of the Charter, this Court must determine next whether defendant Iafrate was appointed or served as the Director of Public Works (in which case he would serve at the pleasure of the Mayor and be subject to dismissal without cause and without right of appeal to the Town Council) or whether he was appointed and served as the Highway Director (in which case he would be subject to dismissal only for cause, subject to a right of appeal to the Town Council).
After a review of the pleadings, testimony and other evidence in this case, the conclusion is inescapable that former Mayor Perrotta did not appoint defendant Iafrate to serve as the Director of Public Works. Mayor Perrotta chose, consistent with the Charter, to assume the directorship himself. He appointed defendant Iafrate as Highway Director and the Town Council ratified that decision.
The clear weight of the evidence supports this conclusion. Plaintiff Macera makes the judicial admission in his complaint that defendant Iafrate served as the former Highway Director. He conceded in his testimony at the evidentiary hearing on this matter that it was an error to refer to defendant Iafrate as the Director of Public Works in the correspondence with Iafrate by which the Mayor-elect requested his resignation. Plaintiff Macera stated unequivocally that it is his understanding today that defendant Iafrate held the position of Highway Director.
The Mayor may have believed at the time he requested defendant Iafrate's resignation that Iafrate served as Director of Public Works, perhaps based on the memorandum from Mayor Perrotta's Chief of Staff misidentifying defendant Iafrate as the Public Works Director. The Mayor's mistake in this regard may well explain the call for defendant Iafrate to resign.
Yet it is clear based on the weight of evidence presented before this Court, as reflected in the decision of the Town Council and the personnel records and correspondence included in the record of the Town Council proceeding, that the memorandum from the Chief of Staff was in error and that defendant Iafrate held the appointed position of Highway Director. The mere fact that others may have erroneously referred to defendant Iafrate as the Public Works Director from time to time, either based on erroneous information or an assumption that he held that position based on the size and significance of the Highway Department within the DPW, cannot change the fact the defendant Iafrate was appointed by Mayor Perrotta as Highway Director and not as Director of the DPW.
It is likewise clear that, as Highway Director, defendant Iafrate was not the functional equivalent of the Director of Public Works. The DPW has a vast array of duties and responsibilities, including overseeing the functions and services of the town relating to highways, streets, sidewalks, bridges, water courses, street lighting, storm sewers, the water supply system, garbage collection and disposal, public buildings and grounds, building inspections, minimum housing regulations, plumbing and electrical regulations and inspections and weights and measures. The existing ordinance contemplates that the DPW will be divided into six discrete agencies: (1) public roads and bridges, (2) public buildings and grounds; (3) public building and inspection; (4) minimum housing regulation; (5) plumbing regulation and inspection; and (6) electrical inspection and regulation. Section 2-49(A) (3-8-71). Under the Perrotta administration, persons were appointed, with Town Council approval, to the positions of Highway Director, Utilities Director, Recreation Director, Building Official, Building Inspector, Director of Building Operations, Plumbing Inspector and Electrical Inspector. See Town's Exhibit O.
As Highway Director, defendant Iafrate's primary duty was to oversee the daily functions of the Highway Department, including the maintenance of streets, highways, and sidewalks. To the extent he supervised the Utilities Director, it is arguable that his duties also included overseeing bridges, water courses, street lighting, storm sewers, the water supply system, and the collection and disposal of garbage. All of these duties, including overseeing the Fleet Maintenance Department, could be classified as fitting within a division of the DPW charged with the oversight of public roads and bridges.
There is no evidence, however, that defendant Iafrate's duties as Highway Director encompassed all of the other functions of the DPW. He exercised no supervisory responsibilities with regard to public buildings and grounds, building inspections, minimum housing regulation, plumbing and electrical regulation and inspection or the regulation of weights and measures. He functioned autonomously from the persons charged with oversight of the offices handling those responsibilities of the DPW.
It must be concluded, therefore, that defendant Iafrate was neither the Director of the DPW nor its functional equivalent. As Highway Director, he was, at most, the greater among equals who answered to the Mayor as the titular head of the DPW.
As noted previously, the Charter does not provide that the Highway Director serves at the pleasure of the Mayor. Indeed, the Charter makes no explicit reference to the Highway Director at all. To the extent the Charter contemplates such a position, it is to be created by the Town Council by ordinance, on the recommendation of the Mayor, with no requirement embodied in the Charter that an appointee to such a position would serve at the pleasure of the Mayor. The ordinance subsequently adopted by the Town Counsel, arguably pursuant to this Charter provision, creates an agency of public roads and bridges (which could be the Highway Department) and provides for the Mayor to appoint the head of that agency (who could be the Highway Director), subject to Town Council approval. There is nothing in the ordinance dictating that such an agency head serves at the pleasure of the Mayor. As such, there is no exception to the rule, as set forth in Art. IV, section 4-6(1) of the Charter, that the Mayor may remove the Highway Director only for cause. There similarly is no exception to the rule, as set forth in Art. XVI, section 16-10 of the Charter, that the Highway Director is granted the right to appeal his dismissal to the Town Council, sitting as the Board of Personnel Review, with notice and an opportunity to be heard granted to the Mayor as the head of the Department of Public Works.
 DECLARATORY AND INJUNCTIVE RELIEF
Accordingly, in response to plaintiff Macera's request in his complaint that this Court determine and declare the rights of the parties, this Court declares that defendant Iafrate was appointed by former Mayor Perrotta to the position of Highway Director, to oversee a division within the Department of Public Works and was not the Director of Public Works or its functional equivalent. This Court further decides that, under the Charter of the Town of Johnston, defendant Iafrate, as Highway Director, did not serve at the pleasure of the Mayor but instead was subject to dismissal only for cause, subject to a right of appeal to the Town Council sitting as the Board of Personnel Review.
Plaintiff Macera's request that this Court declare that the position of Highway Director is a position that is appointed and serves at the pleasure of the Mayor is therefore denied. In light of the declaratory judgment rendered by this Court, this Court need not reach the question of whether the provisions of the collective bargaining agreement, which include the position of Highway Director, are null and void. Defendant Iafrate is entitled to protection from dismissal without cause under the town Charter, regardless of whether similar protection would be afforded to him under the applicable collective bargaining agreement. Plaintiffs request for declaratory relief seeking a declaration that certain provisions of the collective bargaining agreement be declared null and void in therefore denied.
Finally, this Court must address the parties' additional claim for injunctive and equitable relief. Plaintiff Macera seeks to enjoin enforcement of the Town Council decision ordering the reinstatement of defendant Iafrate to his position as Highway Director. Defendant Iafrate seeks issuance of a writ of mandamus to compel his reinstatement.
The Rhode Island Supreme Court has repeatedly held that where the power of an employer to dismiss an employee is limited to dismissal only for cause, a failure to establish the requisite grounds constituting cause shall result in a lack of authority to dismiss. McKinnon v. Housing Authority of Pawtucket,
338 A.2d 511, 519 (R.I. 1975); see also Narragansett Racing Association v.Kiernan, 194 A. 49 (R.I. 1937). Where no cause for dismissal is established, a writ of mandamus may issue to reinstate the employee forthwith with back pay. McKinnon, 338 A.2d at 518-19.
Here the parties do not dispute that defendant Iafrate was terminated from his position as Highway Director without cause. Their dispute centers solely around the question of whether the Mayor had the right to dismiss him without cause. That question is at the root of plaintiff Macera's claim of appeal from the decision of the Town Council filed in this Court that is the subject of his petition for issuance of a writ of certiorari pending in the Supreme Court. As this Court has decided that question in the context of adjudicating plaintiff Macera's complaint for declaratory and injunctive relief, leaving no apparent aspect of the Town Council decision to be decided on appeal, there is no impediment to this Court ruling on the parties' claims for injunctive and equitable relief.
Accordingly, defendant Iafrate's request for issuance of a writ of mandamus embodied in Count II of its counterclaim is granted. Plaintiff Macera is ordered to reinstate defendant Iafrate forthwith to the position as Highway Director, with back pay, as he was unlawfully terminated without cause in violation of the Town Charter. Plaintiff Macera's request to enjoin enforcement of the Town Council decision reinstating defendant is denied, and the temporary restraining order previously issued to maintain the status quo pending this decision is dissolved. This Court's order of reinstatement is to be entered without prejudice to plaintiff Macera's right under the Charter to appoint a Director of Public Works or to any right that the Mayor may have to reconfigure the Public Works Department or the Highway Department or realign the job duties of any employees within the DPW. Defendant Iafrate's request for attorneys' fees and other relief embodied in his counterclaim was severed by agreement of the parties and may be scheduled for further hearing, if necessary, upon the filing of an appropriate motion by defendant Iafrate and the filing of memoranda by all parties.
Counsel are directed to agree upon a form of order and judgment, reflective of this decision, and submit it to the Court forthwith for entry.